UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHAUN GOODALL,

                           Plaintiff

        -v-                                  9:19-CV-1359

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; Commissioner
ANTHONY ANNUCCI; Assistant Commissioner
BRYAN HILTON; Superintendent BRANDON
SMITH; Deputy Superintendent MARIE
HAMMOND; Assistant Deputy Superintendent
LAURIE FISHER; Faculty Health Servicer
DOREEN SMITH; Rehabilitation Coordinator
L. MARDON; Rehabilitation Coordinator
L. O'HARA; Rehabilitation Coordinator
A. CLUEVER; Rehabilitation Coordinator
M. NORIEGA; and Rehabilitation Coordinator
WELYTOK,

                        Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:                                OF COUNSEL:

GEOFFREY SCHOTTER             GEOFFREY SCHOTTER, ESQ.
Attorneys for Plaintiff
65 Lenox Road #1E
Brooklyn, New York 11226

HON. LETITIA JAMES             KYLE W. STURGESS, ESQ.
Attorney General for the State of New York    Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION and ORDER**</u>

**I.**      <u>**INTRODUCTION**</u>

On January 23, 2019, plaintiff Shaun Goodall ("plaintiff" or "Goodall") filed a complaint against defendants Anthony Annucci, A. Cluever, Laurie Fisher, Marie Hammond, Bryan Hilton, L. Mardon, New York State Department of Corrections and Community Supervision ("DOCCS"), M. Noriega, L. O'Hara, and Brandon Smith (together "defendants").  Plaintiff, a physically and psychologically disabled person, objects to DOCCS's allegedly discriminatory handling of its Shock Incarceration Program ("SIP") and its alternatives

Goodall's claims rely on 42 U.S.C. § 1983 ("§ 1983") and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213 (the "ADA").  Defendants, for their part, have moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). The motion having been fully briefed, it will now be considered on the basis of the parties' submissions without oral argument.

**II.**      <u>**BACKGROUND**</u>

      **A.**  <u>**Plaintiff's Sentencing and Early Encounters with SIP.**</u>

On July 14, 2015, Goodall was sentenced to three to six years' imprisonment for third-degree robbery in violation of N.Y. PENAL LAW § 160.05.  Dkt. 9 (the amended complaint, or "AC"), ¶ 37.[1]  His sentencing judge recommended—but did not order—that plaintiff participate in SIP.  *Id.*  SIP is a six-month program combining intense regimentation, exercise, and work therapy on the one hand with "substance abuse treatment, education, pre-release counseling, and life skills counseling" on the other.  AC ¶ 31.

---

[1] The facts are taken entirely from plaintiff's complaint and any and all documents attached to it, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

To be eligible for SIP, an inmate must be:  (1) between sixteen and forty-nine years of age both currently and at the time he committed his crime; (2) serving a sentence for which he will be eligible for release, on parole or otherwise, within three years; (3) free of any prior conviction for a violent felony offense; (4) serving a sentence for a crime that is not among those that automatically render an inmate ineligible for SIP; (5) free of any outstanding warrants, commitments, charges, or immigration flags; and (6) medically and psychologically fit for the program as determined by DOCCS or New York's Office of Mental Health professionals.  Dkt. 9-1, p. 2.[2]  Plaintiff alleges that he meets each of these requirements save the fitness requirement.  *See id.*; *see also* AC ¶ 32.  Inmates can be placed in SIP via volunteer or court order.  AC ¶ 33.

Alternatively, DOCCS has created the Comprehensive Alcohol & Substance Abuse Treatment ("CASAT") program.  AC ¶ 33.  CASAT has similar goals to SIP, but focuses primarily on education and drug abuse prevention as opposed to SIP's heavy dose of physical exercise.  *Id.*  According to Goodall, CASAT is exclusively available to the narrow category of inmates who were explicitly ordered into SIP but who could not meet the latter program's physical and mental fitness requirements.  *Id.*  Completing either program without incident rewards an inmate with early release from incarceration or parole.  AC ¶¶ 31, 33.

On July 24, 2015, Goodall was transferred from county jail to Ulster Correctional Facility, run by DOCCS.  AC ¶ 38.  When Goodall arrived at Ulster, he alleges that the facility's medical department stamped the word "Shock" on his chart, but drew an X through it to note that they did not find him qualified for SIP.  AC ¶ 38.

On July 27, 2015, Ulster's medical staff notified more explicitly in his records that he was '[n]ot a [SIP] candidate."  AC ¶ 39.  In particular, plaintiff's classification as in need of

---

[2] Pagination corresponds with CM/ECF.

"level three mental health services" automatically excluded him from SIP.  AC ¶ 40.

Additionally, DOCCS noted plaintiff's heart disease, cardiac risk factors, and epilepsy as

disabilities that impeded his participation in SIP.  AC ¶ 41.  Plaintiff does not dispute that

those disabilities exist, and in fact alleges that they substantially limit "one or more" of his

"major life activities, including lifting and strenuous exercise."  AC ¶ 30.

Nevertheless, Goodall alleges that on October 23, 2015, he was offered a chance to

participate in SIP.  AC ¶ 42.  However, his concern for his health and his fear that he would

suffer injury as a result of the program won out, and he declined the opportunity.  *Id.*

Apparently, it struck Goodall as unfair that his only opportunity for early release

through intensive therapy and treatment involved risking physical injury.  On February 19,

2017, he submitted a Request for Reasonable Accommodations to participate in a SIP

alternative including, potentially, CASAT.  AC ¶ 43.  Defendant Laurie Fisher ("Fisher"), the

Assistant Deputy Superintendent of Programs at Greene Correctional Facility[3] ("Greene"),

allegedly denied plaintiff's request because SIP eligibility is determined by set requirements

that could not be circumvented.  *Id.*

Undeterred, Goodall filed an Inmate Grievance Complaint on March 20, 2017.

AC ¶ 44.  That grievance argued that denying SIP violated his right to be "free from

discrimination on the basis of disability" including his rights under the ADA.  *Id.*  While the

decision on his grievance was pending, plaintiff requested to be reconsidered for SIP, but

defendant Offender Rehabilitation Coordinator ("ORC") Welytok refused to answer him.

AC ¶¶ 45-46.

---

[3] Apparently, at some point plaintiff was transferred to Greene from Ulster Correctional Facility, although the
complaint is silent as to when—and even whether—this happened.

4

On April 24, 2017, DOCCS denied plaintiff's grievance, allegedly stating again that SIP is not a reasonable accommodation, but a special program targeting specific inmates. AC ¶ 47.  Apparently, the denial made no mention of CASAT or any available alternative.  *Id.*

### B.  <u>Plaintiff's May 25, 2017 Grievance.</u>

On May 23, 2017, Fisher allegedly sent Goodall an Interdepartmental Communication informing him that he was not eligible for SIP because he had already refused its generic form and because alternatives were only available by court order.  AC ¶ 48.  Plaintiff objected to the communication, because the declination form he had signed back in 2015 had explicitly allowed him to be reconsidered for SIP if he notified an ORC that he wanted to be considered again.  *Id.*  According to plaintiff, he had done exactly what the form instructed him to do if he wished to be reconsidered for SIP.  *Id.* ¶¶ 45-46, 48.

Goodall voiced his displeasure at the Interdepartmental Communication with another grievance, this one dated May 25, 2017.  AC ¶ 49.  On May 30, plaintiff asked defendant M. Noriega ("Noriega"), another Greene ORC, to clarify what, precisely, the communication meant.  AC ¶ 50.  In response, he alleges that he only received another Interdepartmental Communication stating that his SIP application was denied because he was a violent felon, which plaintiff asserts is untrue.  *Id.*

Evidently, Goodall's May 25 grievance was denied, because he appealed the grievance to Greene's superintendent, defendant Brandon Smith ("Smith").  AC ¶ 55; *see* Dkt. 9-21.  When Smith denied his appeal on July 31, 2017, plaintiff appealed his grievance further to DOCCS's Central Office Review Committee ("CORC").  AC ¶ 55.  By extension, plaintiff alleges that he completely exhausted his administrative remedies for this grievance. *Id.*

### C.  <u>Plaintiff's August 23, 2017 Grievance.</u>

Seeing one grievance through to completion did not satisfy Goodall, however. Eventually, on July 24, 2017, he and an unnamed ORC signed a "Memo of Agreement" for plaintiff to participate in SIP.  AC ¶ 52.  Plaintiff attached a reasonable accommodation form to the agreement to clarify that he still could not participate in the full program and was hoping for a viable alternative.  *Id.*  However, defendant Dr. Doreen Smith ("Dr. Smith"), Greene's Health Services Director, noted that plaintiff's seizure disorder precluded SIP participation, and Fisher further noted that SIP had specific required qualifications that could not be accommodated.  AC ¶ 53.  As a result, plaintiff was denied participation in the program that same day.  AC ¶ 54.  Plaintiff would grieve Dr. Smith's and Fisher's decision on August 23, 2017.  AC ¶ 59.

The same pattern repeated itself several more times in the following months; Goodall would request to be placed on SIP, get denied, and file a grievance, only to see the grievance denied as well.  AC ¶¶ 55-65.  Meanwhile, a DOCCS Grievance Resolution Committee reviewed the August 23, 2017 grievance.  AC ¶ 61.  The committee stated that "DOCCS should have a medical alternative" to SIP even if it would require a change to state law.  *Id.*; *see* Dkt. 9-26.  However, the committee also noted that no further action was necessary because plaintiff had already submitted identical grievances in the past which were denied. Dkt. 9-26.  Plaintiff contended that the committee was wrong to find no further action possible because his grievance was based on a novel denial of SIP participation.  *Id.*  To express his disagreement, and to exhaust his administrative remedies, plaintiff appealed the committee's determination to Smith.  *Id.*; *see* AC ¶ 61.

On October 20, 2017, Smith combined Goodall's August 23, 2017 grievance with his several others, and presumably denied them all.[4]  AC ¶ 66.  Dissatisfied, plaintiff filed one

---

[4] The complaint and its attached papers do not definitively say one way or the other whether Smith approved or denied the appeal.

final grievance on October 27, 2017.  Dkt. 9-33, p. 1.  On December 20, 2017, Smith again

denied plaintiff's grievance.  AC ¶ 69.  Plaintiff alleges that he appealed this last denial to

CORC to completely exhaust his administrative remedies.  *Id.*

Apparently deciding that grievances were not going to provide him with the remedy he

sought, plaintiff served on the Attorney General a Notice of Intention to File a Claim on

December 23, 2017.  AC ¶ 70.  A year later, on December 26, 2018, Goodall was released

from prison.  AC ¶ 4.  On January 23, 2019, he followed through on his intention to file a

claim and brought the present complaint.  Dkt. 1.  In addition to the defendants named in the

factual recitation above, plaintiff brought § 1983 and ADA claims against defendants Anthony

Annucci and Bryan Hilton as Commissioner and Assistant Commissioner of DOCCS, arguing

that they are responsible for the conduct of their subordinates.  AC ¶¶ 6-9.

Additionally, Goodall alleges that defendant Marie Hammond, as Deputy

Superintendent of Programs at Greene, is responsible for ensuring proper placement of

inmates in programs.  AC ¶¶ 12-13.  Defendants L. Mardon and L. O'Hara are the

Senior/Supervising ORCs at Greene, and thus, plaintiff alleges, were responsible for every

claimed deprivation their subordinates caused.  AC ¶¶ 18-21.  Finally, defendant alleges that

defendant A. Cluever is a Greene ORC who is similarly responsible for coordinating

rehabilitative efforts, including ensuring that plaintiff be able to take advantage of SIP.

AC ¶¶ 22-23.

On December 6, 2019, defendants, consisting of DOCCS and several of its employees

who were responsible for denying plaintiff's accommodation requests, filed the present

motion to dismiss the complaint.  Dkt. 87.

## III.   LEGAL STANDARD

### A. Subject-Matter Jurisdiction.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Id.* at 138 (citations omitted).

The Eleventh Amendment provides a limitation to district courts' subject-matter jurisdiction such that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  In other words, that Amendment "generally bars suits in federal court by private individuals against non-consenting states." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015).  The Eleventh Amendment's sovereign immunity extends not only to cases where the state itself is a named party, but also to cases where an action is against certain state agents or instrumentalities.  *Leitner*, 779 F.3d at 134.

Congress may nevertheless abrogate the States' Eleventh Amendment immunity under § 5 of the Fourteenth Amendment.  *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 108 (2d Cir. 2001).  It may only do so, however, if the statute abrogating immunity seeks to: (1) prevent a State from depriving "any person of life, liberty, or property, without due process of law"; (2) prevent a State from denying any person "equal protection of the laws"; or (3) to

remedy or deter a State's conduct that violates those substantive guarantees, so long as there is "congruence and proportionality between the violation to be prevented or remedied and the means adopted to that end." *Id.* (cleaned up).

Alternatively, a state may waive its right to Eleventh Amendment immunity. *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004). A State's decision to waive its immunity is "altogether voluntary" on the part of the state. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Therefore, under the "stringent" test for finding waiver, a State must either voluntarily invoke the jurisdiction of the federal courts or else make a "clear declaration" that it intends to submit itself to that jurisdiction. *Id.* at 675-76.

### B. Failure to State a Claim.

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540. The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

### IV.   DISCUSSION

Goodall asserts two claims:  (1) a claim under § 1983 for denial of his rights to equal protection as guaranteed by the Fourteenth Amendment of the Constitution of the United States; and (2) a claim under Title II of the ADA for denial of access to public services.

### A.  Plaintiff's § 1983 Claims.

Defendants argue for the dismissal of Goodall's § 1983 claims on two grounds:  (1) the Eleventh Amendment provides DOCCS, as an arm of the State of New York, with sovereign immunity; and (2) plaintiff failed to state a claim for which relief can be granted.

### 1.  Sovereign Immunity.

It is undisputed that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Moreover, New York has not waived its sovereign immunity for § 1983 claims.  *See Jones v. N.Y. Div. of Military & Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999).  Of course, "[t]here can be no dispute that DOCCS is an agency and arm of the State of New York and, therefore, entitled to New York's Eleventh Amendment immunity."  *Czerwinski v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 394 F. Supp. 3d 210, 227 (N.D.N.Y. 2019).  Claims for money damages against state officials in their official capacity are similarly barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985).

By extension, Goodall's § 1983 claims must be dismissed to the extent that he asserts them against DOCCS or any defendant in his or her official capacity.  However, the Eleventh Amendment has no bearing on his § 1983 claims against the individual defendants in their individual capacities.  *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that state officials may be sued in their individual capacities under § 1983).

### 2.  Adequacy of Plaintiff's Pleadings.

A plaintiff lodging an equal protection claim must demonstrate both:  (1) adverse treatment as compared to similarly situated individuals; and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008) (cleaned up).  Even if a plaintiff establishes selective treatment, however, he must also show that that treatment cannot survive the applicable level of scrutiny.  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

In turn, the appropriate level of scrutiny hinges on whether a plaintiff can establish he was a member of a suspect class, a quasi-suspect class, or no class at all.  *See Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (noting that if action "interferes with the exercise of a fundamental right" or disadvantages a "suspect class" strict scrutiny applies); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 138-39 (S.D.N.Y. 2015) (applying intermediate scrutiny to a "quasi-suspect class"); *see also Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 136 (2d Cir. 2013) (applying rational basis review where plaintiff is not member of protected class).  Being disabled or perceived as disabled does not place a person in either a suspect or a quasi-suspect class.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-68 (2001).  As such, Goodall's claim must survive rational basis review to grant him relief.  *See id.*

Rational basis review protects from constitutional censure any decision by a State which acts on the basis of a group's "distinguishing characteristics relevant to interests the State has the authority to implement[.]"  *Garrett*, 531 U.S. at 366-67 (internal citations omitted).  In other words, a State's classification of a group of people "cannot run afoul of the [e]qual [p]rotection [c]lause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Id.* (citing *Heller v. Doe*, 509 U.S.

312, 320 (1993)).  The plaintiff bears the pronounced burden to negative "any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Heller*, 509 U.S. at 320 (internal citations and quotation marks omitted).

Alternatively, a plaintiff can also bring an equal protection claim on the basis that a government action is treating him, as an individual, unfairly.  *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221 (2d Cir. 2012) (emphasis added) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  These claims are commonly referred to as "class-of-one" claims.  *Feiner*, 694 F.3d at 221.  If a plaintiff can establish himself as a class of one, he can claim a violation of his equal protection rights based on arbitrary, disparate treatment to him specifically.  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019).

But to put that cart behind a proper horse, a plaintiff must first prove that:  (1) no rational person would view his circumstances as different from a comparator's to a degree that his differential treatment would be justified based on a legitimate government policy; and (2) the circumstances between the plaintiff and this comparator are so similar, and the treatment so different, that there is no possibility that the disparate treatment was a mistake. *NRP Holdings*, 916 F.3d at 198.  "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's [is] whether they are prima facie identical."  *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 110 (N.D.N.Y. 2016).

As an initial matter, some misconceptions must be cleared up as to how both parties have postured their arguments on defendants' motion.  Defendants argue that because Goodall does not allege that he is a member of a class subject to heightened scrutiny, he *must* bring a class-of-one claim.  For plaintiff's part, he argues that a class-of-one claim is simply an interchangeable term for rational basis review.

Neither party completely grasps the state of the law.  As the law recited above abundantly demonstrates, class-of-one claims are a distinct breed of equal protection claims, subject to their own unique analysis.  Goodall is thus wrong to lump it together with rational basis review, even though rational basis review is part of the class-of-one analysis.  *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 F. App'x 32, 35-36 (2d Cir. 2014) (summary order) ("To state a class-of-one equal protection claim the plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (cleaned up)).  But defendants are not blameless, either. They rely on *Long v. Annucci*, 2018 WL 6982086, at *6 (N.D.N.Y. Oct. 16, 2018) for the proposition that a plaintiff claiming an equal protection violation based on disability must bring a class-of-one claim.  *Long*, in turn, relied on *Kaiser v. Highland Cent. Sch. Dist.*, 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008), which cited *Price v. City of New York*, 264 F. App'x 66, 68 (2d Cir. 2008), for the same principle.

However, *Price* did not consider an equal protection claim rooted in disability writ large; it dealt with an archetypal class-of-one claim in which the plaintiff alleged that he was treated differently than other similarly situated people who were injured in the course of their employment.  264 F. App'x at 68.  By extension, *Price* never held or suggested that disabled persons must bring class-of-one claims.  *Id.*  Nor could it, considering that *Garrett*, the Supreme Court case that first held that disabled persons do not occupy a protected or quasi-suspect class, used generic rational basis review to analyze the claim presented and never considered the existence of comparators—the hallmark of class of one analysis.  531 U.S. at 366-67.  By extension, the simple fact that disabled persons are not a protected class does not automatically require a disabled plaintiff to plead a class-of-one claim.

Thus, each party's contention that there is only one flavor of claim available to Goodall is incorrect.  The question now must be whether he has cognizably alleged either claim.  As an initial matter, it is clear that plaintiff cannot state a class-of-one claim.  Such a claim would require that he, specifically, was denied SIP or CASAT for entirely arbitrary and personal reasons.  He would need to allege that there were other inmates who were permitted to enter either SIP or CASAT despite being so similar to him that no reasonable person would believe that their admission would be owed to legitimate policy.  *NRP Holdings*, 916 F.3d at 198.  He cannot.

After all, he can hardly dispute that his denial from participation in SIP and CASAT was attributable to a policy duly enacted by DOCCS.  The two categories of inmates he identifies as having been treated differently—those who are not disabled and those judicially ordered into SIP—are both sufficiently different from his own circumstances so as to be attributable to the DOCCS policy of only admitting inmates into CASAT if they were court-ordered into SIP—rather than a target on his back.  *NRP Holdings*, 916 F.3d at 198.  If, for example, plaintiff had been ordered into SIP and been denied entry into CASAT, he could bring a plausible class-of-one claim, but that is not his case.  Alternatively, if he could identify comparators who were disabled and placed in CASAT despite not being judicially ordered into it, that also would allow for a cognizable class-of-one claim.  But that, too, is not his case, and thus to whatever extent plaintiff alleges a class-of-one claim, his claim must be dismissed.

However, that does not answer whether Goodall has stated an equal protection claim as a member of the class of disabled people.  Construing the complaint liberally, plaintiff has pled that disabled people are denied the opportunity to volunteer for early release through an intensive rehabilitative program aimed at alcohol treatment and therapy.  AC ¶ 82.  Plaintiff

14

also alleges that there is no rational basis for having a readily available alternative to SIP but walling that alternative off unless an inmate is ordered into it. *Id.*

Moreover, looking at the complaint as alleged, Goodall has taken sufficient steps to negative any potential rational basis for limiting CASAT to those inmates who are ordered into SIP when the physically able have the ability to simply volunteer for the latter program. Although it is plaintiff's burden to do so, the Court can bring no rational basis to mind, and defendants' arguments in their motion to dismiss are less than persuasive.  It is doubtful that DOCCS saves much in the way of funding or public resources by keeping disabled inmates incarcerated for longer periods when CASAT already exists to offer them rehabilitative measures that result in less time and money spent feeding and housing them.

Nor is it clear what defendants mean when they offer "trying to preserve the uniformity and serve the underlying purpose of the normal shock regimen" as a governmental interest. CASAT already deviates from the normal SIP program in terms of its physical rigor, and limiting CASAT participants to inmates who otherwise qualify for SIP but are physically incapable of participating in the exercise regimen would not appreciably change the status quo.

Of course, Goodall's burden of proving that there is no conceivable rational basis for the individual defendants' alleged policy of not admitting disabled persons into CASAT if they are not ordered into SIP will be enormously difficult to carry forward.  Nevertheless, at this early stage, plaintiff's claim cannot be so lightly dismissed.  Accordingly, defendants' motion to dismiss plaintiff's § 1983 claims against the individual defendants must be denied.[5]

**B.** **Plaintiff's ADA Claims.**

---

[5] The Court need not reach the question of whether plaintiff has adequately alleged personal involvement by each defendant at this juncture, because defendants did not move to dismiss plaintiff's complaint on that ground.

Defendants offer two familiar arguments in favor of dismissing Goodall's ADA claims: (1) Eleventh Amendment sovereign immunity; and (2) failure to state a claim for which relief can be granted.

### 1. **Sovereign Immunity.**

In enacting the ADA, Congress unequivocally abrogated the States' Eleventh Amendment immunity.  42 U.S.C. § 12202.  However, as discussed above, Congress's authority to abrogate Eleventh Amendment immunity is necessarily cabined to deprivations and violations of the Fourteenth Amendment where the abrogation is congruent and proportional to the violation.  *Garcia*, 280 F.3d at 108; *see United States v. Georgia*, 546 U.S. 151, 158-59 (2006) (discussing whether and to what extent the ADA abrogates Eleventh Amendment immunity).

In *Georgia*, the Supreme Court considered the constitutionality of the ADA's abrogation of sovereign immunity.  546 U.S. at 158-59.  Ultimately, the *Georgia* court found that the abrogation was constitutional as long as the particular claim that a plaintiff brings seeks damages for a State's conduct that "*actually* violates the Fourteenth Amendment."  *Id.* at 159.  Thus, courts must analyze on a claim-by-claim basis:  "(1) which aspects of the State's alleged conduct violated Title II [of the ADA]; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment," whether the purported abrogation of sovereign immunity is nevertheless valid.  *Id.*

The *Georgia* question in this case could not be much more straightforward.  Goodall's amended complaint alleges that the same policy of limiting CASAT to disabled persons who were ordered into it "simultaneously" denied plaintiff equal protection under the Fourteenth Amendment and violated Title II of the ADA.  AC ¶ 84.  Moreover, as discussed above,

16

plaintiff has plausibly alleged that that policy did, in fact, violate his Fourteenth Amendment right to equal protection under the law.  There is thus perfect overlap between defendants' conduct for plaintiff's § 1983 and ADA claims, and that conduct plausibly violated the Fourteenth Amendment.  Therefore, New York's Eleventh Amendment immunity has been constitutionally abrogated for the purposes of a Rule 12(b)(1) motion, and defendants' motion to dismiss plaintiff's ADA claim on the basis of sovereign immunity must be denied.

### 2.  <u>Adequacy of Plaintiff's Pleadings.</u>

To state a claim for denial of access to public services under Title II of the ADA, a plaintiff must show that:  (1) he is a qualified individual with a disability; (2) defendants are an entity subject to the ADA; and (3) plaintiff was denied the opportunity to participate in or benefit from services, programs, or activities, or was otherwise discriminated against by reason of disability.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Additionally, a plaintiff must have actually requested an accommodation, although that requirement is unnecessary if the disability is obvious or known to the defendant.  *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008).

A qualified person with a disability is a disabled person who, "with or without reasonable accommodation, can perform the essential functions" of the program in which they hope to participate.  42 U.S.C. § 12111(8).  Additionally, to be a qualified individual, the plaintiff must meet every essential eligibility requirement of the program he seeks to enter. *Mary Jo C. v. N.Y. State and Local Ret. Sys.*, 707 F.3d 144, 156-57 (2d Cir. 2013).  A plaintiff is disabled within the meaning of the ADA if he:  (1) suffers from a physical or mental impairment; and (2) that impairment substantially limits a major life activity upon which the plaintiff relies.  *See Potter v. Xerox Corp.*, 1 F. App'x 34, 37 (2d Cir. 2001) (summary order).

By the language of the ADA itself, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant . . . ."  42 U.S.C. § 12112(b)(5)(A).  A failure to accommodate can only be excused if a defendant "can demonstrate that the accommodation would impose an undue hardship" on its operations.  *Id.*

To the extent that defendants argue that Goodall's ADA claims against the individual defendants in their personal capacities must be dismissed, they are correct.  Although the Second Circuit has not expressly ruled that there is no available remedy under the ADA against individual defendants, the district courts of this circuit—including this one—have overwhelmingly done so.  *See, e.g.*, *Frantti v. N.Y.*, 2017 WL 922062, at *5 (N.D.N.Y. Mar. 8, 2017); *Dominelli v. N. Country Acad.*, 2016 WL 616375, at *7 (N.D.N.Y. Feb. 16, 2016); *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014).  There is no apparent reason to deviate from that precedent, and Goodall supplies none.  Thus, plaintiff's ADA claims against the individual defendants must be dismissed.

As for Goodall's ADA claim against DOCCS, it is beyond dispute that DOCCS is an entity subject to the ADA.  *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  Neither do defendants dispute that plaintiff is disabled within the meaning of the ADA, given his several allegations of medical conditions that substantially limit major life activities.  AC ¶ 30; *Potter*, 1 F. App'x at 37.  Additionally, plaintiff has demonstrated several times over that he requested accommodation.  *See, e.g.*, AC ¶¶ 43, 52.  Accordingly, the only questions left are whether Goodall:  (1) was qualified for SIP and/or CASAT; and (2) was denied access to a program or was otherwise discriminated against on the basis of his disability.

As to the first question, defendants cite *Doe v. Goord* and *Dimperio v. N.Y. Dep't of Corr. & Cmty. Supervision*, two cases that allegedly support the proposition that Goodall is

not qualified for SIP or CASAT.  Defendants' citation to *Doe*, 2005 WL 3116413, at *1-5, 18-19 (S.D.N.Y. Nov. 22, 2005) is inapposite for two reasons.  First, the *Doe* court found its plaintiff unqualified for CASAT on summary judgment, not on a motion to dismiss, and the difference in standards gives pause.  *Id.*  Second, the *Doe* plaintiff was a violent felon and, as a result, unqualified for SIP or CASAT regardless of disability, unlike plaintiff.  *Id.*

Though much more persuasive, defendants' citation to *Dimperio*, 2015 WL 1383831, at *6-7 (N.D.N.Y. Mar. 25, 2015) is also inapt.  In *Dimperio*, this Court adopted a report and recommendation to the effect that, because plaintiff was not ordered into SIP, he was not qualified for CASAT as a matter of law.  *Id.*  The Second Circuit affirmed, but did so on the basis that DOCCS could not be obligated to create an alternative to SIP where none existed.[6] *Dimperio v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 653 F. App'x 52, 54 (2d Cir. 2016) (summary order).

However, the plaintiff in *Dimperio* was exclusively seeking entry into CASAT, or else the creation of an alternative program.  2015 WL 1383831, at *6-7; 653 F. App'x at 54.  As Goodall correctly notes, he is not challenging that he was denied entry into CASAT or SIP.  Nor is he calling for a new alternative to be created.  Instead, he is challenging DOCCS' policy of only permitting inmates into CASAT by court order.  In other words, plaintiff is alleging that the court order requirement that defendants now rely on to dismiss his claim is itself a discriminatory act under the ADA.

Some explanation may be necessary.  A judicial order is not required to enter SIP.  But SIP is not available for the physically disabled.  CASAT exists as an alternative to SIP.  But disabled people can only reach CASAT by judicial order.  These four truths are undisputed.  Together, however, they mean that disabled inmates face a barrier to a rehabilitative

---

[6] Curiously, the Second Circuit's opinion made no mention whatsoever of CASAT.  *See generally Dimperio*, 653 F. App'x at 54.

early-release program that physically able inmates do not.  Disabled inmates—and only disabled inmates—cannot volunteer for an existing rehabilitative program, even though able inmates may volunteer for their corresponding program.

*Dimperio* is thus a poor fit because the Second Circuit's concern with ordering the state to create a new program is not the solution to Goodall's concern, all that is required is that disabled inmates be given the same opportunity to volunteer for their existing program. 653 F. App'x at 54.  Similarly, the *Dimperio* District Court's ruling that its plaintiff could not recover because he was not qualified for CASAT is inapplicable here because plaintiff alleges that exact qualification is itself discriminatory, which that plaintiff did not.  2015 WL 1383831, at *6-7.

Assuming Goodall is correct, which this Court must on a motion to dismiss, invalidating his claim based on a discriminatory qualification would destroy the purpose of an ADA claim, because ADA defendants could simply create qualifications that apply only to disabled people.  A discriminatory qualification broad enough to cover the entire swath of the disabled would mean that no disabled person would be qualified for the program, and thus there could be no qualified disabled person capable of bringing an ADA claim.  Thus, DOCCS' policy of requiring disabled inmates to be ordered into CASAT cannot render plaintiff unqualified.

All told, were Goodall not disabled he would be qualified for SIP, and the additional qualification requiring a court order for CASAT applies to him only because of his disabilities. Moreover, plaintiff has adequately alleged that he meets every criteria for entry into CASAT and SIP other than those that he specifically objects to as discriminatory.  Therefore, plaintiff has adequately alleged that he is a qualified, eligible person with a disability.

Finally, precisely because Goodall only faces impediments to participating in the two existing early release programs because of his physical and mental disabilities, it cannot be

doubted that he was denied access to those programs because he was disabled.  As a result, plaintiff has adequately pled every element of a Title II ADA claim.  Defendants' motion to dismiss his ADA claim against DOCCS must therefore be denied.

## V.   CONCLUSION

Ultimately, the question at stake in this case is whether depriving disabled inmates, including Goodall, of the ability to volunteer for CASAT in the same manner that physically able inmates can volunteer for SIP, violated plaintiff's rights under § 1983 and the ADA.  The question poses a bit of a thicket, because it involves not one program, or even two, but rather the intersectionality of SIP and CASAT.  At this juncture, plaintiff has plausibly alleged that DOCCS and the individual defendants run those two programs together in a manner that violates his rights to equal protection and under the ADA.  His complaint must therefore survive defendants' motion to dismiss.

Therefore, it is

ORDERED THAT

1.  Defendants' Dkt. 87 motion to dismiss is GRANTED IN PART and DENIED IN PART;

2.  Plaintiff's § 1983 claims against DOCCS and the individual defendants in their official capacities are DISMISSED WITHOUT PREJUDICE;

3.  Plaintiff's ADA claims against the individual defendants are DISMISSED WITHOUT PREJUDICE;

4.  Plaintiff's Count I § 1983 claims against the individual defendants in their individual capacities and Count II ADA claim against DOCCS may proceed; and

5.  Defendants are directed to answer plaintiff's amended complaint no later than Tuesday, April 14, 2020.

Dated:  March 31, 2020
       Utica, New York.

David N. Hurd
U.S. District Judge