UNITED STATES DISTRICT COURT
~~EASTERN~~ NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUN GOODALL,<br><br>                            *Plaintiff,*<br><br>           -against-<br><br>NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUITY SUPERVISION, COMMISSIONER ANTHONY ANNUCCI, ASSISTANT COMMISSIONER BRYAN HILTON, SUPERINTENDENT BRANDON SMITH, DEPUTY-SUPERINTENDENT MARIE HAMMOND, ASSISTANT DEPUTY SUPERINTENDENT LAURIE FISHER, FACILITY HEALTH SERV. DIRECTOR DOREEN SMITH, REHABILITATION COORDINATOR, L. MARDON, REHABILITATION COORDINATOR L. O'HARA, REHABILITATION COORDINATOR A. CLUEVER, REHABILITATION COORDINATOR, M. NORIEGA, and REHABTIITATION COORDINATOR WELYTOK,<br><br>                            *Defendants.* | ~~FIRST~~ SECOND AMENDED COMPAINT<br><br>No. 19-cv-~~532~~ 1359 (~~KAM~~DNH)(~~SJB~~CFH)<br><br><br>JURY TRIAL DEMANDED |

Plaintiff, Shaun Goodall, by his attorney~~s~~ Geoffrey Schotter and Disability Rights New York, as and for his ~~First~~ Second Amended Complaint against Defendants, alleges the following:

**PRELIMINARY STATEMENT**

1.      This is a civil action seeking relief and/or damages, authorized by Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12101, et seq. ), Section 504 of the Rehabilitation Act of 1973, and ~~the~~ 42 U.S.C. § 1983 to redress violations of those Acts.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction over the action under 28 U.S.C. §§ 1331, 1343(4) and 2201.

3.      The ~~Eastern~~ Northern District of New York is an appropriate venue under 28 U.S.C. §§ 1391 (b)(1), (c)(2), and (d), because Defendant New York State Department of Corrections and Community Supervision resides in the State of New York and its contacts with the ~~Eastern~~

-1-

Northern District of New York would be sufficient to subject it to personal jurisdiction if that district were a separate State.

## **PARTIES**

4.      Plaintiff, Shaun Goodall, is and was at all relevant times mentioned herein, an inmate of the State of New York in the custody of New York State Department of Corrections & Community Supervision. He was released from incarceration on December 26, 2018, and currently resides in Suffolk County, New York.

5.      Defendant New York State Department of Corrections and Community Supervision is a State Agency organized and existing under the laws of the State of New York and maintains sufficient contacts with the Eastern District of New York.

6.      Defendant, Anthony Annucci functions as the Commissioner of New York State Department of Corrections & Community Supervision (henceforth, NYSDOCCS) and is employed at the Harriman State Campus, Building 2, 1220 Washington Avenue, Albany, New York, 12226.

7.      Upon information and belief, Mr. Annucci, in his individual Capacity, was and is at all relevant times herein, the Commissioner of NYSDOCCS. He is legally responsible for the overall operations and policies of the Department and in each institution under its jurisdiction, including Greene Correctional Facility (*hereinafter* "Greene C.F.").

8.      Defendant, Bryan Hilton, functions as the Assistant Commissioner of NYSDOCCS and is employed at the Harriman State Campus, Building 2, 1220 Washington Avenue Albany, New York 12226.

-2-

9.      Upon information and belief, Mr. Hilton, in his individual capacity, was and is at all times herein, the Assistant Commissioner of NYSDOCCS. He is legally responsible for the operations and policies of the Department and each institution under its jurisdiction, including Greene C.F.

10.     Defendant, Brandon Smith, functions as the Superintendent of Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

11.     Upon information and belief, Mr. Smith, in his individual capacity, was and is at all relevant times herein, the Superintendent of Greene C.F.. He is legally responsible for the management of subordinates as a Supervisor, and for the decisions, conduct, and behavior of all employees under his command. He has authority to remedy any matter of impropriety. Mr. Smith is also directly responsible for rendering decisions on grievance complaints submitted by the inmate population.

12.     Defendant, Marie Hammond, functions as the Deputy Superintendent of Programs at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

13.     Upon information and belief, Ms. Hammond, in her individual capacity, was and is at all relevant times herein, the Deputy Superintendent of Programs of Greene C.F. She is legally responsible for ensuring proper placement in programs or services for eligible and qualified inmates so that they may benefit from its rehabilitative components.

14.     Defendant, Laurie Fisher, functions as the Assistant Deputy Superintendent of Programs at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

15.     Upon information and belief, Ms. Fisher, in her individual capacity, was and is at all relevant times herein, the Assistant Deputy Superintendent of Programs of Greene C.F. She is

legally responsible for ensuring proper placement in programs or services for eligible and qualified inmates so that they may benefit from its rehabilitative components.

16.     Defendant, Doreen Smith, functions as the Facility Health Services Director at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

17.     Upon information and belief, Ms. Smith in her individual capacity, was and is at all times relevant herein, the Facility Health Services Director of Greene C.F. and is a licensed Medical Doctor/ Provider, and in her official capacity is a Medical Doctor/Provider at Greene

C.F. Her duties consist of, but are not limited to, evaluating inmate's health, assessing ~~disibilities~~disabilities, and rendering decisions relating to reasonable accommodations for individuals with serious medical needs or disabilities.

18.     Defendant, L. Mardon, functions as a Senior/Supervising Offender Rehabilitator Coordinator at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

19.     Upon information and belief, L. Mardon, in ~~his/~~her individual capacity, was and is at all relevant times herein, one of the Senior/Supervising Offender Rehabilitator Coordinators of Greene C.F. H~~is/h~~er duties consist of but are not limited to coordinating rehabilitative efforts to ensure eligible and qualified inmates benefit from programs or services through screening and suitability and overseeing the conduct and behavior of subordinate Offender Rehabilitation Coordinators (*hereinafter* "O.R.C.").

20.     Defendant, L. O'Hara, functions as a Senior/Supervising O.R.C. at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

21.     Upon information and belief, L. O'Hara, in her individual capacity, was and is at all relevant times herein, one of the Senior/Supervising O.R.C.'s of Greene C.F. L. O'Hara's duties consist

-4-

of, but is not limited to, coordinating rehabilitative efforts to ensure eligible and qualified inmates benefit from programs or services through screening and suitability and overseeing the conduct and behavior of subordinate O.R.C.s.

22.      Defendant A. Cluever functions as an O.R.C. at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

23.      Upon information and belief, A. Cluever, in her individual capacity, was and is at all relevant times herein, an O.R.C. of Greene C.F. A. Cluever's duties consist of, but is not limited to, coordinating rehabilitative efforts to ensure eligible and qualified inmates benefit from programs or services through screening and suitability.

24.      Defendant M. Noriega functions as an O.R.C. at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

25.      Upon information and belief, M. Noriega, in her individual capacity, was and is at all relevant times herein, an O.R.C. of Greene C.F. M. Noriega's duties consist of, but is not limited to, coordinating rehabilitative efforts to ensure eligible and qualified inmates benefit from programs or services through screening and suitability.

26.      Defendant Ms. Welytok functions as an O.R.C. at Greene C.F. and is employed at 165 Plank Road, Post Office Box 975, Coxsackie, New York 12051.

27.      Upon information and belief, Ms. Welytok, in her individual capacity, was and is at all relevant times herein, an O.R.C. of Greene C.F.. Ms. Welytok's duties consist of, but is not limited to, coordinating rehabilitative efforts to ensure eligible and qualified inmates benefit from programs or services through screening and suitability.

**FACTUAL ALLEGATIONS**

28.  Plaintiff has filed no other lawsuit in State or Federal court dealing with the same or similar facts involved in this action.

29.  Plaintiff commences this action against the Defendants mentioned in paragraphs (5) to (27) pursuant to Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131 *et seq.*), Section 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, whereby Plaintiff's Federal Rights were repeatedly violated by acts of disability discrimination pursuant to an unlawful policy and custom maintained by Defendants, a policy and series of acts which simultaneously violated Plaintiff's right to equal protection of the laws pursuant to Section 1 of the Fourteenth Amendment to the United States Constitution.

30.  The impairments of myoclonus/seizure disorder, multiple cardiac risk factors, serious mental disorder, epilepsy, and heart disease substantially limit one or more of Plaintiff's major life activities, including lifting and strenuous exercise. A record of such impairment is well documented.

31.  NYSDOCCS administers a Shock Incarceration Program (*hereinafter* "SIP"). This program places eligible inmates in a six-month highly structured routine of discipline, intensive regimentation, exercise, and work therapy, together with substance abuse treatment, education, pre-release counseling, and life skills counseling. Inmates who successfully complete the SIP are granted an early release from incarceration and/or parole.

32.  During all relevant time periods, NYSDOCCS Directive # 0086, entitled "Shock Incarceration Facilities," annexed hereto as **Exhibit 1**, set forth the criteria for eligibility for the SIP in Section IV. Plaintiff met and continues to meet all of the eligibility requirements set forth in Section IV of this Directive. In particular, Plaintiff notes that his instant offense of third-degree robbery per Section 160.05 of the New York Penal Law does not preclude him from eligibility for

-6-

SIP because it is not a "violent felony offense" as defined in Section 70 of the New York Penal Law and is not one of the other enumerated disqualifying offenses listed in Section IV of Directive # 0086. Furthermore, Plaintiff does not have any prior convictions in his record that would disqualify him for SIP eligibility per Section IV of Directive # 0086.

33.    There are two ways in which eligible inmates may be placed in the SIP. Some inmates voluntarily apply for the SIP, are accepted, and then are placed in the SIP. Other inmates are placed in the SIP pursuant to a court order. Inmates are given preliminary screenings at reception centers to determine if they meet statutory eligibility criteria for participation in the SHOCK Incarceration Program. Even when an inmate satisfies all of the eligibility criteria for the SIP candidacy, he or she may be deemed unsuitable if there exists a serious medical or mental health problem that makes them unsuitable to participate in the SIP. Court-ordered SIP inmates who have such serious medical or mental health problems are placed in an alternative program, the Comprehensive Alcohol & Substance Abuse Treatment ("CASAT"), which focuses more on education and drug abuse prevention than physical exercise and is located at Hale Creek Correctional Facility. Inmates who complete the CASAT are granted early release from incarceration and/or parole just as if they completed the SIP. However, inmates with serious medical or mental health problems who were not ordered by a court to participate in SIP and who are otherwise eligible for the SIP and apply for placement in the SIP are not placed in the CASAT but are simply denied any type of early release or parole program and must serve out the remainder of their terms, notwithstanding their eligibility for the SIP or CASAT.

34.    During all relevant time periods, NYSDOCCS Directive #2614, entitled "Reasonable Accommodations For Inmates With Disabilities," annexed hereto as **Exhibit 2**, stated the following:

Title II (Subtitle A) of the Americans With Disabilities Act (ADA) prohibits State and local entities from discriminating against any qualified individual with a disability in their programs, services, and activities. Therefore, the programs and services provided to inmates by this agency, or those that may be contracted to other entities, must ensure accessibility and usability by qualified inmates in the most integrated settings. The Department is required to make "reasonable accommodations" or modifications to existing policies and procedures to allow qualified inmates with disabilities the same opportunities, as non-disabled inmates, unless to do so would be an undue burden to the Department, cause a fundamental alteration to a program or compromise the safety of the facility.

35.     According to Section II.B of Directive #2614, reasonable accommodations for inmates with disabilities may include, "any change in the environment, policies, procedures, or the manner in which tasks are completed enables a qualified individual with a disability to participate in a program or service." Thus, only a change in policy is required so that disabled inmates who voluntarily apply for and are otherwise eligible for SIP can participate and benefit from CASAT in the same manner that disabled inmates who are placed in SIP by court order currently do. Nevertheless, while it is true that reasonable accommodations are only extended to court-ordered disabled inmates and not volunteers, it is also a fact that an inmate with a disability may request a reasonable accommodation to any program at any time during incarceration without having to be screened by Guidance Unit, according to NYSDOCCS Directive #2614, page (2) of (5), Section IV.

36.     A change in NYSDOCCS policy to allow disabled inmates who voluntarily apply for and are otherwise eligible for SIP to participate in CASAT the way disabled inmates who are placed in SIP by court order do does not pose any "fundamental alteration" because CASAT is already in procedural operation for court-ordered inmates. Moreover, Directive #2614, entitled "Reasonable Accommodations For Inmates With Disabilities" states at Section II.D: Undue Burden; "Reasonable Accommodations or modifications which would result in a fundamental alteration in the nature of a program or activity or in undue financial and administrative hardship. This is a

limited exception under the ADA and generally cannot be used for denying an accommodation or a modification requested for program accessibility."

37.     On July 14, 2015, Plaintiff was sentenced to an indeterminate prison term of three to six years for the crime of 3rd Degree Robbery pursuant to Section 160.05 of the New York Penal Law. *See* **Exhibit 3**, annexed hereto. The sentencing judge recommended that Plaintiff participate in the SIP but did not order that he be placed in it.

38.     On July 24, 2015, Plaintiff departed from county jail and entered State custody at Ulster Correctional Facility (Reception Center). The Medical Department determined that Plaintiff was unsuitable for the SIP, stamped the word "SHOCK" on his medical chart, and scrawled an "X" through it. *See* **Exhibit 4**, annexed hereto.

39.     On July 27, 2015, the medical staff at Ulster Correctional Facility noted in Plaintiff's medical records, "Not a SHOCK candidate," after screening and discovering numerous disabilities. *See* **Exhibit 5**, annexed hereto. Plaintiff was then advised by the Medical Department that he would not be permitted entry into the SIP because if he participated in the program, his health would be at risk of an injury.

40.     On July 27, 2015, the Office of Mental Health staff at Ulster Correctional Facility assigned a "Mental Health Services" level of "3" to Plaintiff. This classification level automatically excluded Plaintiff from the SIP. *See* **Exhibit 6**, annexed hereto.

 41.     On September 10, 2015, Plaintiff obtained a "Medical Problem List" printed from the Health Services System of NYSDOCCS, which is annexed hereto as **Exhibit 7**. His "current classifications" of "1" for "Medical" and "3" for "O.M.H." both exclude him from participation in the SIP. A few of Plaintiff's disabilities include, "multiple cardiac risk factors," "serious mental disorder," "epilepsy," and "heart disease."

42.   On October 23, 2015, despite having been informed repeatedly by the Medical Department that he was, "Not a SHOCK candidate," Plaintiff was offered an opportunity to participate in the SIP. Aware that participation would likely result in an injury, and careful to heed the medical advice he had received, Plaintiff signed a "Voluntary Declination" form, which is annexed hereto as **Exhibit 8**. No alternative program such as CASAT was offered to Plaintiff to accommodate his disabilities. The Voluntary Declination form that Plaintiff signed specified that Plaintiff would not be reconsidered for the SIP unless he notified his O.R.C. directly.

43.   On February 19, 2017, Plaintiff submitted a "Request For Reasonable Accommodations" to participate in an alternative program the SIP such as CASAT because of his disabilities. *See* **Exhibit 9**, annexed hereto. However, Assistant Deputy Superintendent of Programs Laurie Fisher denied Plaintiff's application, stating: "Admission to SHOCK Alternative Program is not a Reasonable Accommodation. SHOCK admission is based on screening performed by Guidance Unit and eligibility requirements."

44.   On March 20, 2017, Plaintiff submitted Inmate Grievance Complaint No. GNE- 9243-17, in which he wrote that "[t]he decision to deny me admission [to the SIP or to an alternative equivalent such as CASAT] violates my right to be free from discrimination on the basis of disability and violates my rights under the Americans With Disabilities Act." *See* **Exhibit 10**, annexed hereto.

45.   On March 21, 2017, Plaintiff forwarded a correspondence to O.R.C. Welytok of the Guidance Unit asking to be reconsidered for the SIP, as instructed in the "Voluntary Declination" form he had signed. *See* **Exhibit 11**, annexed hereto.

46.     On April 10, 2017, Plaintiff submitted an amendment to Inmate Grievance Complaint GNE-9243-17 after O.R.C. Welytok refused to respond to his request ~~for~~ to be reconsidered for the SIP. *See* **Exhibit 12**, annexed hereto.

47.     On April 24, 2017, Plaintiff received a decision regarding Inmate Grievance Complaint GNE-9243-17, which is annexed hereto as **Exhibit 13**. The decision denied the grievance, noting that "SHOCK is not a reasonable accommodation." The decision made no mention of CASAT or any other equivalent alternative to SIP that would accommodate inmates whose disabilities precluded participation in the SIP itself.

48.     On May 23, 2017, Plaintiff received an "Interdepartmental Communication" from Assistant Deputy Superintendent of Programs Laurie Fisher stating: "You are not eligible (for SHOCK) as follows: 1) You refused SHOCK in 2015 2) You can only be placed in the SHOCK alternative program if you are court-ordered into SHOCK (and disabled). You were not court-ordered." *See* **Exhibit 14**, annexed hereto. Plaintiff did, indeed, initially "refuse" to participate in the SIP after he was advised by the Medical Department that he was "Not a SHOCK candidate" and that enrollment without a reasonable accommodation would be injurious. However, the "Voluntary Declination" form that Plaintiff signed allowed him to be reconsidered for SIP participation after notifying his O.R.C., which he did.

49.     On May 25, 2017, Plaintiff submitted Inmate Grievance Complaint GNE-9366-17. *See* **Exhibit 15**, annexed hereto. This new grievance challenged the Superintendent's recent decision in the May 23, 2017 Interdepartmental Communication that Plaintiff was ineligible for participation in the SIP or CASAT and asked for reconsideration of that determination.

50.     On May 30, 2017, after seeking clarification from O.R.C. M. Noriega, Plaintiff received another Interdepartmental Communication that stated, confusingly: "VFO [Violent Felony

Override] done when you qualify for Temporary Release/CASAT SHOCK - most of the time is court order. Programs we have sent a copy!" *See* **Exhibit 16**, annexed hereto. To the extent that this statement can be construed to mean that Plaintiff was denied participation in the SIP or CASAT because of an exclusion from these programs of inmates convicted of violent felonies, Plaintiff notes that he was never convicted of a violent felony and reiterates that the sentencing judge recommended (though did not order) that Plaintiff participate in the SIP.

51.     On June 5, 2017, Plaintiff submitted an amendment to Inmate Grievance Complaint GNE-9366-17 in which he disputed the reasons why O.R.C. M. Noriega alleged Plaintiff was ineligible for the SIP. *See* **Exhibit 17**, annexed hereto.

52.     On July 24, 2017, Plaintiff and an O.R.C. signed a "SHOCK Incarceration Program Memo Of Agreement" wherein Plaintiff agreed to participate in the SIP and agreed to abide by the rules of the program. *See* **Exhibit 18**, annexed hereto. Plaintiff wrote on top of the form that he agreed to participate only with a reasonable accommodation and attached a Reasonable Accommodation Request to the form. *See* **Exhibit 19**, annexed hereto.

53.     In responding to the Reasonable Accommodation Request, a Dr. Smith stated "Please note current medical regimen precludes SHOCK" and referenced "myoclonus/seizure disorder" on the form. The Assistant Deputy Superintendent of Program Laurie Fisher commented at the bottom that "Shock eligibility cannot be determined or granted through a reasonable accommodation."

54.     On July 24, 2017, the SHOCK Screening Committee filled out a SHOCK Incarceration Suitability Screening Form and denied Plaintiff eligibility for the program due to "reason Code" "99," which, upon information and belief, is the code for "UNSUITABLE- OTHER." *See* **Exhibit 20**, annexed hereto.

-12-

55.    On July 31, 2017, Superintendent Smith responded to Inmate Grievance Complaint GNE-9366-17 by stating "it was already explained to Grievant previously that Alternative SHOCK is only mandated for court ordered SHOCK inmates when they are medically unable to participate in the SHOCK program." *See* **Exhibit 21**, annexed hereto. Plaintiff appealed this decision to the Central Office Review Committee (*hereinafter* "C.O.R.C.") for final disposition and to fully exhaust his administrative remedies.

56.    On August 7, 2017, A Memorandum from O.R.C. A. Rouse was sent to Plaintiff explaining three reasons for denying Plaintiff participation in the SIP. These reasons include Instant Offense, Criminal History, and Psychiatric History. *See* **Exhibit 22**, annexed hereto.

57.    On August 9, 2017, a "Program Eligibility Screening & Monitoring Inmate Program Overview" was printed and mentions Plaintiff's reason for unsuitability as "OTHER." *See* **Exhibit 23**, annexed hereto.

58.    On August 14, 2017, Plaintiff submitted Inmate Grievance Complaint GNE-9484- 17 because his O.R.C. refused to provide him with the reason(s) for which he was assumed to be ineligible for the SIP.

59.    On August 23, 2017, Plaintiff submitted Inmate Grievance Complaint GNE-9507- 17, which addressed the reasonable accommodation denial of July 24, 2017. *See* **Exhibit 24**, annexed hereto. Plaintiff would again agree to attend the SIP when it was "offered" in the future, only to be treated similarly.

60.    On August 28, 2017, Elena Landriscina of Disability Rights New York ("DRNY"), acting on Plaintiff's behalf, contacted a Commissioner of Corrections and two Superintendents of Greene C.F. to demand cooperation and compliance and informed Plaintiff of her investigation. *See* **Exhibit 25**, annexed hereto.

61.     On September 13, 2017, in an inmate Grievance Resolution Committee hearing concerning Inmate Grievance Complaint GNE-9507-17, the Committee stated: "Committee agrees that DOCCS should have a medical alternative to SHOCK even if this requires changes to State statute." *See* **Exhibit 26**, annexed hereto. In order to exhaust his administrative remedies and preserve his right to file a claim, Plaintiff appealed this decision to the Superintendent and eventually the C.O.R.C. in Albany.

62.     On September 26, 2017, Superintendent Smith responded to Inmate Grievance Complaint GNE-9484-17. *See* **Exhibit 27**, annexed hereto. The reason for denial set forth therein, "UN-SUITABLE-OTHER" did not clarify the reasons for Plaintiff's denial. It is accurate that Plaintiff did not agree to participate in the program "as presented" at first, but Plaintiff subsequently exercised his right to submit a Reasonable Accommodation Request form pursuant to NYSDOCCS Directive #2614, Section IV. "As presented" would have involved rigorous physical exertion that would have placed Plaintiff's health and safety at risk. Plaintiff sought the alternative placement in the CASAT program that court-ordered inmates with disabilities attend, or another arrangement.

63.     On September 29, 2017, Plaintiff was "offered" participation in the SIP again, and he signed another "Memo Of Agreement," annexed hereto as **Exhibit 28**, but this time he made it understood that he was not medically fit by attaching a Reasonable Accommodation Request Form and medical records. *See* **Exhibit 29**, annexed hereto.

64.     Dr. Smith inscribed on the Reasonable Accommodation Request Form: "Please note current medical condition precludes strenuous program activities. Disability well documented." Deputy Superintendent of Programs Marie Hammond wrote on the form: "SHOCK requires

-14-

participants to engage in physical exercise and drills. Inmate does not qualify for exemption from this requirement."

65.     On October 13, 2017, the SHOCK Screening Committee completed a second SHOCK Incarceration Suitability Screening Form and denied Plaintiff admission again, this time for "Reason Code" "08," which, upon information and belief, is code for "UNSUITABLE-MEDICAL." *See* **Exhibit 30**, annexed hereto.

66.     On October 20, 2017, Superintendent Smith responded to Inmate Grievance Complaint GNE-9507-17 pertaining to the reasonable accommodation denial of July 24, 2017. **Exhibit 31**, annexed hereto. However, due to the number of Plaintiff's grievances by this time, the Superintendent began to combine the incidences into one matter because they are of the same nature. Yet, each denial is a separate and distinct act.

67.     On October 23, 2017, Elena Landriscina of DRNY provided Plaintiff with a copy of NYSDOCCS's Associate Counsel's response to her request for answers about Plaintiff's SIP denials. *See* **Exhibit 32**, annexed hereto. The Associate Counsel stated Plaintiff was not medically cleared for the SIP and added: "Mr. Goodall's conditions do not constitute a disability as defined in the Americans With Disabilities Act," but later admitted that Plaintiff's medical condition would excuse him from "virtually the entire program" because of the activities involved in the SIP. The Associate Counsel mentioned that a fundamental alteration of the program would be needed to accommodate Plaintiff but failed to mention that there is already an alternative to the SIP, CASAT, and that only a change in policy would be needed for Plaintiff to participate in CASAT.

68.     After waiting for the completed Reasonable Accommodation Request form from the Deputy Superintendent of Programs and for the decision from the SHOCK Screening Committee,

Plaintiff submitted his final grievance, Inmate Grievance Complaint GNE-9608-17 complaining about being denied SHOCK again. *See* **Exhibit 33**, annexed hereto.

69.     On December 20, 2017, Superintendent Smith responded to Inmate Grievance Complaint GNE-9608-17 unfavorably to Plaintiff, and Plaintiff appealed that determination to the C.O.R.C. in Albany to fully exhaust administrative remedies.

70.     On December 23, 2017, Plaintiff served a Notice Of Intention To File A Claim on the Attorney General setting forth in sum and substance the allegations made herein. *See* **Exhibit 34**, annexed hereto.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

71.     Plaintiff used the Inmate Grievance Program (*hereinafter* "I.G.P.") procedure available at Greene C.F. to attempt to resolve the discrimination on five separate occasions as there were five individual commissions against Plaintiff.

72.     Plaintiff filed his first grievance (GNE-9243-17) on March 21, 2017, and presented the facts related to the claim. On April 10, 2017, Plaintiff amended this grievance and it was consolidated. On April 24, 2017. Plaintiff was sent a response from the Superintendent, explaining his grievance was denied. On April 27, 2017, Plaintiff appealed the denial to the C.O.R.C. in Albany for final disposition and to exhaust administrative remedies. On July 5, 2018, the C.O.R.C. unanimously denied Plaintiff's first of five grievances. **Exhibit 35**, annexed hereto.

73.     Plaintiff again used the I.G.P. procedure available at Greene C.F. to attempt to resolve the ongoing discrimination by filing his second of five grievances (GNE-9366-17) on May 30, 2017, and presented the facts related to the claim. On June 5, 2017, Plaintiff amended this grievance and it was consolidated. On July 31, 2017, Plaintiff was sent a response from the Superintendent explaining that his grievance was denied. On August 1, 2017, Plaintiff appealed the denial to the

-16-

C.O.R.C. for final disposition and to exhaust his administrative remedies. On December 19, 2018, the C.O.R.C. unanimously accepted in part Plaintiff's second of five grievances "only to the extent that CORC upholds the determination of the Superintendent[.]" **Exhibit 36**, annexed hereto.

74.　　Plaintiff again used the I.G.P. procedure available at Greene C.F. to attempt to resolve the ongoing discrimination by filing his third of five grievances (GNE-9484-17) on August 14, 2017, and presented the facts related to the claim. On September 26, 2017, Plaintiff received a response from the Superintendent, explaining that his grievance was affirmed in part. On September 28, 2017, Plaintiff appealed this decision to the C.O.R.C. for a final disposition and to exhaust administrative remedies. On February 6, 2019, the C.O.R.C. unanimously denied Plaintiff's third of five grievances. **Exhibit 37**, annexed hereto.

75.　　Plaintiff again used the I.G.P. procedure available at Greene G.F. to attempt to resolve the ongoing discrimination by filing his fourth of five grievances (GNE-9507-17) on August 23, 2017, and presented the facts related to his claim. On September 13, 2017, Plaintiff received a hearing on his grievance, which was partly accepted. On September 14, 2017, Plaintiff appealed this decision to the Superintendent. On October 20, 2017, Plaintiff was sent a response from the Superintendent, explaining that his grievance was denied. On October 24, 2017, Plaintiff appealed the denial to the C.O.R.C. in Albany for a final disposition and to exhaust administrative remedies. On February 6, 2019, the C.O.R.C. unanimously denied Plaintiff's fourth of five grievances. **Exhibit 38**, annexed hereto.

76.　　Plaintiff again used the I.G.P. procedure available at Greene C.F. to attempt to resolve the ongoing discrimination by submitting his fifth of five grievances (GNE-9608-17) on October 27, 2017, and presented the facts related to his claim. On December 20, 2017, Plaintiff was sent a response from the Superintendent, explaining that his grievance was affirmed to an extent. On

December 23, 2017, Plaintiff appealed this decision to the C.O.R.C. in Albany for final disposition and to exhaust his administrative remedies. This grievance was received by the C.O.R.C. on February 2, 2018, but a timely decision has been delayed due to an alleged influx of grievances by inmates. *See* **Exhibit 39**, annexed hereto.

**CAUSES OF ACTION**

**I.  TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (DENIAL OF REASONABLE ACCOMMODATION)**

77.  Plaintiff realleges and incorporates by reference, paragraphs 1 to 76.

78.  Plaintiff brings this claim against NYSDOCCS.

78 79.  Plaintiff is and was a qualified individual with a disability within the meaning of Title II of the ADA and the New York Human Rights Law and is otherwise eligible for participation in the SIP, as defined by New York Correction Law § 865 and NYSDOCCS Directive #0086 entitled, "SHOCK Incarceration Facilities."

79 80.  The New York State Department of Corrections and Community Supervision is a public agency of the State of New York, and Greene Correctional Facility is a public entity within the meaning of Title II of the Americans with Disabilities Act.

80 81.  Plaintiff was at all relevant times totally and completely eligible for participation in the SIP but for his disabling medical conditions, which, as alleged above, limit one or more of his major life activities.

81 82.  Plaintiff, as alleged above, was discriminated against by being excluded from or denied the benefits of Greene Correctional Facility's services, namely participation in SIP with a reasonable accommodation or participation in the equivalent of SIP in a modified setting, such as the CASAT program.

-18-

8283.   The CASAT program was at all relevant times a ready-made alternative to the SIP which amounted to a reasonable accommodation within the meaning of Title II of the Americans with Disabilities Act. Notwithstanding Defendants' allegations to the contrary in their responses to and rulings on Plaintiff's Inmate Grievances, the only reason why Defendants denied Plaintiff participation in the CASAT program is because the sentencing court did not order him to participate in the SIP, and he volunteered for SIP participation instead, and Defendants' policies provide that only inmates whom a court ordered to participate in the SIP but whose disabilities preclude such participation may participate in the CASAT program instead. This policy has no rational basis and therefore in practice amounts to discrimination by Defendants against Plaintiff because of Plaintiff's disability, in violation of Title II of the Americans with Disabilities Act.

**II.    SECTION 504 OF THE REHABILITATION ACT OF 1973**

84.     Plaintiff re-alleges and incorporates paragraphs 1-83.

85.     Plaintiff brings this claim against NYS DOCCS.

86.     Section 504 provides that "[n]o otherwise qualified person with a disability in the United States. . . shall, solely by reason of her or his  disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

87.     Defendant NYS DOCCS is a program and conducts activities that receive federal financial assistance.

88.     Defendant Anthony Annucci, Commissioner of NYS DOCCS, is responsible for the operation of public programs and activities receiving federal financial assistance.

89.     Plaintiff is and was a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act and was otherwise eligible for participation in the SIP, as defined by

-19-

Formatted: Font: Bold

New York Correction Law § 865 and NYS DOCCS Directive #0086 entitled, "SHOCK Incarceration Facilities."

90.    Plaintiff was at all relevant times totally and completely eligible for participation in the SIP but for his disabling medical conditions, which, as alleged above, limit one or more of his major life activities.

91.    Plaintiff, as alleged above, was discriminated against by being excluded from or denied the benefits of Greene Correctional Facility's services, namely participation in SIP with a reasonable accommodation or participation in the equivalent of SIP in a modified setting, such as the CASAT program.

92.    The CASAT program was at all relevant times a ready-made alternative to the SIP which amounted to a reasonable accommodation within the meaning of Title II of the Americans with Disabilities Act. Notwithstanding Defendants' allegations to the contrary in their responses to and rulings on Plaintiff's Inmate Grievances, the only reason why Defendants denied Plaintiff participation in the CASAT program is because the sentencing court did not order him to participate in the SIP, and he volunteered for SIP participation instead, and Defendants' policies provide that only inmates whom a court ordered to participate in the SIP but whose disabilities preclude such participation may participate in the CASAT program instead. This policy amounts to discrimination by Defendants against Plaintiff because of Plaintiff's disability, in violation of Section 504.

93.    Pursuant to Defendants' discriminatory policies, Defendants repeatedly and continuously denied Plaintiff's requests for a reasonable accommodation throughout his incarceration.

**III.    42 U.S.C. § 1983 (U.S. Const., Amend. XIV, § 1)**

8394.   Plaintiff realleges and incorporates by reference, paragraphs 1 to 8292.

-20-

95.     Plaintiff brings this claim against the individual Defendants in their individual capacities.

8496.  The aforementioned policy of and conduct by Defendants that violated Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, as alleged above, simultaneously denied Plaintiff, who at all relevant times was a person within the jurisdiction of the State of New York, the equal protection of the laws, in violation of Section 1 of the Fourteenth Amendment to the United States Constitution. There is no legitimate government interest to which such policy and conduct is rationally related.

8597.  Defendants' repeated denials of Plaintiff's multiple requests for a reasonable accommodation in the form of admission to the CASAT program, and their obfuscations in justifying such denials, as alleged above, cumulatively evidence malice toward Plaintiff for at best a reckless indifference to Plaintiffs rights.

**JURY TRIAL DEMANDED**

8698.  A jury trial is demanded on all issues triable by jury.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

1.     A declaration that the acts and omissions described herein violated Plaintiffs rights under the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

2.     Compensatory damages in an amount to be adduced at trial the amount of $3,000,000.00 against each Defendant jointly and severally;

3.     Punitive damages in an amount to be adduced at trial the amount of $2,000,000.00 against each individual Defendant, in his or her individual capacity, jointly and severally;

Plaintiffs costs in this suit;

5.      Attorneys' fees to the extent applicable; and any additional relief as this Court deems just,

proper, and equitable.

Dated: April 17, 2019September 30, 2020
        Brooklyn, New York

                                        Respectfully submitted,


_____
                                        GEOFFREY SCHOTTER, ESQ.
                                        Attorney Counsel for Plaintiff
                                        65 Lenox Road #1E300 Cadman Plaza
West, 12th Floor

                                        Brooklyn, New York 11226 11201
                                        Phone: (347) 413-9014
                                        geoffrey.schotter@gmail.com


                                        TERESA CATURANO
                                        DISABILITY RIGHTS NEW YORK
                                        Co-Counsel for Plaintiff
                                        25 Chapel Street, Suite 1005
                                        Brooklyn, New York 11201
                                        Phone: (518) 512-4533

**Formatted:** Default Paragraph Font, Font: (Default) +Body (Calibri), 11 pt

**Formatted:** Font: (Default) Times New Roman, 12 pt

**Formatted:** Font: (Default) Times New Roman, 12 pt

**Formatted:** Font: Italic

**Formatted:** Font: (Default) Times New Roman, 12 pt

-22-