UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAWN P. GOODALL,

*Plaintiff*,

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION, et
al.,

*Defendants*.

19-CV-1359

DNH/CFH

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

Stacey Hamilton
Assistant Attorney General, of Counsel
Date: May 1, 2023

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

POINT I: PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A
DISABILITY ................................................................................................. 3

POINT II: PLAINTIFF CANNOT RAISE A TRIABLE ISSUE OF FACT TO
SUPPORT A CLAIM UNDER 42 U.S.C. § 1983 ............................................ 7

A.  Plaintiff was not deprived of a constitutional right ........................................... 7

B.  At all times referenced in Plaintiff's Complaint, the Defendants were acting in
their official capacity and did not have the requisite "personal
involvement" ...................................................................................................... 9

Defendant Cluever ................................................................................. 10

Defendant L. Mardon ............................................................................ 19

Defendant Commissioner Anthony Annucci ........................................... 20

Defendant M. Noriega ........................................................................... 21

Defendant Rehabilitation Coordinator Welytok ...................................... 22

Deputy Superintendent Brandon Smith ................................................... 23

C.  The Plaintiff was not subject to unequal treatment ........................................ 24

POINT III: PLAINTIFF'S CLAIM IS BARRED BY THE ELEVENTH
AMENDMENT DOCRTINE OF SOVEREIGN IMMUNITY ...................... 24

CONCLUSION ....................................................................................................................... 28

i

**Table of Authorities**

CASES                                                                                          PAGE(S)

*Amador v. Macy's E.-Herald Square,*
   2014 U.S. Dist. LEXIS 145852 (S.D.N.Y. Oct. 3, 2014) ..........................................................2

*Bd. of Tr. of Univ. of Ala. v. Garrett,*
   531 U.S. 356 (2001)..........................................................................................................24, 25

*Black v. Coughlin,*
   76 F.3d 72 (2d Cir. 1996)........................................................................................................15

*Bolmer v. Oliveira,*
   594 F.3d 134 (2d Cir. 2010)....................................................................................................26

*Bragdon v. Abbott,*
   524 U.S. 624 (1998)..................................................................................................................2

*Connecticut Bd. of Pardons v. Dumschat,*
   452 U.S. 458 (1981)..................................................................................................................7

*Davis v. County of Nassau,*
   355 F.Supp.2d 668 (E.D.N.Y. 2005) ............................................................................9, 19, 20

*Dean v. University of Buffalo School of Medicine and Biomedical Sciences,*
   804 F.3d 178 (2d Cir. 2015)....................................................................................................26

*Engleston v. Guido,*
   41 F.3d 865 (2d Cir. 1994), cert denied, 516 U.S. 808 (1995) .................................................9

*Enosken v. Squires,*
   532 F. Supp. 3d 75 (E.D.N.Y. 2021) ........................................................................................8

*Fabrizio v. Smith,*
   2021 U.S. Dist. LEXIS 45856, 2021 WL 2211206 (N.D.N.Y. Mar. 10, 2021) .....................15

*Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn,*
   280 F.3d 98 (2d Cir. 2001)...............................................................................................25, 26

*Gill v. Mooney,*
   824 F.2d 192 (2d Cir. 1987)......................................................................................................9

*Greenholtz v. Inmates of Neb. Penal & Correctional Complex,*
   442 U.S. 1 (1979)......................................................................................................................7

*Harper v. Cuomo,*
   2021 U.S.Dist. LEXIS 39173 (N.D.N.Y. March 1, 2021).......................................................1

*Hilton v. Wright*,
   928 F.Supp. 2d 530 (N.D.N.Y. Mar. 11, 2013) ..................................................27

*Jones v. N.Y.State Metro Developmental Disabilities Servs.*,
   543 Fed. Appx. 20 (2d Cir. 2013)........................................................................25

*Joyce v. Suffolk County*,
   911 F.Supp. 92 (E.D.N.Y. 1996) ............................................................................3

*Kantrowitz v. Uniondale Union Free Sch. Dist.*,
   822 F.Supp.2d 196 (E.D.N.Y. 2011) ......................................................................9

*Kearney v. N.Y.S.D.O.C.S*,
   2013 U.S.Dist. LEXIS 140932 (N.D.N.Y. July 31, 2013).....................................27

*Kentucky Dept's of Corrections v. Thompson*,
   490 U.S. 454 (1989)................................................................................................8

*Klos v. Haskell*,
   48 F.3d 81 (2d Cir. 1995)....................................................................................7, 8

*Logan v. Graham*,
   2021 U.S. Dist. LEXIS 185140, (N.D.N.Y. Sept. 28, 2021) .................................16

*Mary Jo C. v. N.Y.State & Local Ret. Sys.*,
   707 F.3d 144 (2d Cir. 2013)..................................................................................28

*Matthews v. Thomas*,
   2017 U.S. Dist. LEXIS 184550 (N.D.N.Y. 2017) ..................................................8

*McMillan v. Perez*,
   2016 U.S. Dist. LEXIS 125812 (S.D.N.Y. 2016) ...................................................8

*Morea v. Fanning*,
   2017 U.S. Dist. LEXIS 123467 (S.D.N.Y. Aug. 4, 2017) .......................................2

*Nadel v. Shinseki*,
   57 F.Supp.3d 288 (S.D.N.Y. 2014) .........................................................................3

*Neb Morrow v. Vanderwerff*,
   2022 U.S. Dist. LEXIS 2838 (N.D.N.Y. Jan. 6, 2022)..........................................15

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)................................................................................................24

*Ramrattan v. Fischer*,
   2015 U.S.Dist. LEXIS 74510 (N.D.N.Y. June 9, 2015).........................................27

*Shine v. N.Y. City Hous. Auth.*,
 2020 U.S. Dist. LEXIS 171403 (S.D.N.Y. Sept. 18, 2020)........................................2

*Tennessee v. Lane*,
 541 U.S. 509 (2004)........................................................................................25

*United States v. Georgia*,
 546 U.S. 151 (2006)........................................................................................26

*Wolff v. McDonnell*,
 418 U.S. 539 (1974)..........................................................................................7

*Wright v. Smith*,
 21 F.3d 496 (2nd Cir. 1994)...............................................................................8

*Zahra v. Town of Southold*,
 48 F.3d 674 (2d Cir. 1995).................................................................................9

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ..........................................................................................27

Eleventh Amendment....................................................................................24, 27

Fourteenth Amendment .......................................................................25, 26, 27, 28

**STATE STATUTES**

N.Y. Correct. Law 867.2-a..............................................................................24

N.Y. Correct. Law
 § 867.2...........................................................................................................8
 § 867.5...........................................................................................................9

**FEDERAL STATUTES**

29 U.S.C. § 794(a) ...........................................................................................1

42 U.S.C. § 1983...........................................................................................7, 9

ADA.................................................................................1, 2, 5, 7, 25, 26 ,27, 28

Americans with Disabilities Act, 42 U.S.C.
 §§ 12101-213 ..................................................................................................1

Corrections Law
 §§ 865 and 867..............................................................................................14

Rehab Act of 1973
    § 504................................................................................................................1

**FEDERAL REGULATIONS**

28 C.F.R.
    § 35.108(a)(1)(i-iii)......................................................................................2
    § 35.108(d)(Pet1) .........................................................................................2

**RULES**

Federal Rules of Civil Procedure
    Rule 56..........................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff alleges that defendant New York State Department of Corrections and Community Supervision ("DOCCS") violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213 (the "ADA"), and § 504 of the Rehab Act of 1973, and that the individual defendants violated his 14th Amendment right to equal protection pursuant to their alleged discriminatory handling of the Shock Incarceration Program ("SIP"). Defendants submit this memorandum of law in support of their motion for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56.

## <u>ARGUMENT</u>

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harper v. Cuomo*, 2021 U.S.Dist. LEXIS 39173, *40 (N.D.N.Y. March 1, 2021) (quoting *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity. *Id*. (citing 42 U.S.C. § 12132). Similarly, § 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). The second circuit has noted that "the standards under both statutes are generally the same[.]" *Harper*, *supra*, (quoting *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). Where, as here, the subtle distinctions between the two statutes ae not implicated, courts "treat claims under the two statutes identically." *Id*. (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

Pursuant to Title II of the ADA, a disability is defined as (i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (ii)

1

a record of such an impairment, (iii) being regarded as having such an impairment.  28 C.F.R. § 35.108(a)(1)(i-iii).  The second circuit has held that district courts should apply the three-step approach taken by the United States Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624 (1998) to determine whether a plaintiff is disabled.  *Shine v. N.Y. City Hous. Auth.*, 2020 U.S. Dist. LEXIS 171403 *10 (S.D.N.Y. Sept. 18, 2020) (citing *Hernandez v. Int'l Shoppes, Inc.*, 100 F.Supp. 3d 232, 257 (E.D.N.Y. 2015).  Under that approach the plaintiff must first show that he suffers from a physical or mental impairment.  Second, he must identify the activity claimed to be impaired and establish that it constitutes a major life activity.  Third, the plaintiff must show that her impairment substantially limits the major life activity previously identified.  *Id*. (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, *147) (2nd Cir. Ct. of Appeals, March 29, 2002) "A plaintiff must specifically allege which major life activities are substantially limited by the claimed disability to establish a prima facie case."  *Id*.; *see also*, *Amador v. Macy's E.-Herald Square*, 2014 U.S. Dist. LEXIS 145852 (S.D.N.Y. Oct. 3, 2014) (granting motion to dismiss because "in none of plaintiff's submissions . . . does she list or otherwise specifically identify which major life activities she is claiming were impacted by her injuries").  Not every impairment will constitute a disability.  28 C.F.R. § 35.108(d)(Pet1)

For an impairment to substantially limit a major life activity, it must "prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives."  *Morea v. Fanning*, 2017 U.S. Dist. LEXIS 123467, *18 (S.D.N.Y. Aug. 4, 2017) (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)).  "District courts in the Second Circuit have repeatedly held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, without supporting medical testimony, simply is not sufficient to establish a prima facie case under the ADA."  *Id*. (*citing Sussle v. Sirina Prot. Sys.*

*Corp.*, 269 F.Supp.2d 285 (S.D.N.Y. 2003)).  A plaintiff's self-serving, conclusory claims as to limitations on major life activities or bodily functions, "without more, are not proof of a substantial limitation on a person's major life activities."  *Id.*; *see also Nadel v. Shinseki*, 57 F.Supp.3d 288, 296 (S.D.N.Y. 2014) (citation omitted).  The Second Circuit has held that where the traits upon which the alleged discriminatory treatment is based are "commonplace, they do not rise to the level of an impairment." *Joyce v. Suffolk County*, 911 F.Supp. 92, 96 (E.D.N.Y. 1996) (quoting <u>*Daley v. Koch*</u>, 892 F.2d 212, 215 (U.S. Ct. of Appeals 1989)).

<u>**POINT I**</u>

<u>**PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY**</u>

Paragraph 30 of Plaintiff's 2nd Amended Complaint states, "The impairments of myoclonus/seizure disorder, multiple cardiac risk factors, serious mental disorder, epilepsy, and heart disease substantially limit one or more of Plaintiff's major life activities, including lifting and strenuous exercise."  Dkt. No. 107, ¶ 30.  Paragraphs 81 and 90 of Plaintiff's 2nd Amended Complaint state, "Plaintiff was at all relevant times totally and completely eligible for participation in the SIP but for his disabling medical conditions, which, as alleged above, limit one or more of his major life activities."  Dkt. No. 107, ¶ 81, 90.  Plaintiff's pleading is otherwise silent as to how and/or in what manner he suffers from a physical or mental impairment; the activity claimed to be impaired and how it is impaired; and how any alleged impairments substantially limit any alleged major life activity identified.  Dkt. No. 107.

Defendants served Interrogatories on Plaintiff on or about May 2020.  Interrogatory numbered twelve stated:  Describe in detail each and every alleged disability claimed by the Plaintiff at any time, including but not limited to any alleged disability or disabilities suffered by the Plaintiff during all times relevant to his action against the Defendants.  For each such disability

describe in detail the nature, severity, and duration of the impairment or impairments giving rise to that disability; as well as the activity or activities that the Plaintiff alleges are limited by that disability, and the extent to which the Plaintiff is limited in that activity or activities.  Exhibit 1. On or about August 2020, Plaintiff responded by stating, "Plaintiff sets forth the following conditions:

    a.  Epilepsy/Myoclonic Seizure Disorder effecting the neurological system, causing involuntary muscle contractions.

    b.  Heart disease and hypertension effecting the cardiovascular system.

    c.  Radiculopathy, back pain effecting the musculoskeletal system.

    d.  Adjustment disorders, with mixed anxiety and depressed mood effecting the brain function.

    e.  Depressive disorder, effecting the brain function.

    f.  Antisocial personality disorder, effecting the brain function.

    g.  Hiatal hernia and GERD effecting the digestive system.

    h.  Flat feet effecting the musculoskeletal system.

Plaintiff has not supplemented his responses to these Interrogatories and discovery in this matter is closed.  Plaintiff has not retained a medical expert in this matter and his time to do so has expired.

Defendants submit a declaration from Dr. Smith, Greene C.F. Facility Health Services Director, and the Plaintiff's primary medical care provider for his entire period of incarceration at Greene C.F. in support of their summary judgment motion.  Dr. Smith states that the Plaintiff never required more than routine medical care during his incarceration at Greene C.F. and further states

4

that, based upon her review of the Plaintiff's medical records, there is no indication that the Plaintiff suffered from a disability as defined in Title II of the ADA.

Prior to his incarceration on or about July 2015, Plaintiff was employed as a sheet metal worker for Local 28.  Exhibit 2, pg. 19.  His duties involved cutting and hanging sheet metal.  Ex. 2, pg. 40.  During Plaintiff's incarceration, he completed a training course for "inmate program associates" and was employed as a B2 clerk.  Exhibit 3, pg. 132.  The duties of the position consisted of assisting other inmates and staff with clerical duties.  Ex. 3, pg. 34.  The Plaintiff received positive evaluations related to his employment while incarcerated.  *Id*.  The only reasonable accommodation requests Plaintiff submitted while in prison from July 2015 – December 2018 were those related to seeking to participate in the SIP and/or alternative Shock. Plaintiff did not require any accommodations to participate in any of the programming he engaged in while incarcerated, nor for any other aspect of his period of incarceration.

Upon Plaintiff's release from DOCCS, he was employed by a roofing company wherein his duties included going up on roofs and applying insulation, rolling polyurethane on to roofs with a roller, and/or using a blower to clean the roofs off.  Ex. 2, pg. 36.  Plaintiff also worked at 7-11 as a cashier post incarceration (Ex. 2, pg. 37); he worked for a pool company wherein he rode his bike to work and his duties were to rake leaves out of pools (Ex. 2, pg. 34, 35); he worked for a flooring company wherein his duties were to mix liquids in a bucket, pour them on the floor with a paintbrush and/or pole and roll the material onto the floor; he worked for a moving company (Ex. 2, pg. 39); he worked cleaning out an 85 year old widow's home (Ex. 2, pg. 26); and he worked for a construction company (Ex. 2, pg. 49).  Plaintiff testified during his deposition that he left 7-11 to work for the roofing company because he felt he could learn something "and pursue some sort of career as opposed to being a cashier."  Ex. 2, pg. 38. Plaintiff also testified that he

5

intended to return to his union job as a sheet metal worker post incarceration.  Ex. 2, pg. 184.  In fact, Plaintiff claims that he lost a lucrative career because his period of incarceration caused him to lose his employment as a sheet metal worker.  *Id*.

The Plaintiff submitted three reasonable accommodation requests to DOCCS requesting an accommodation to participate in the SIP, and/or the alternative to the SIP.  Dkt. No. 107, Exhibits 9, 19, 29.  In each of them, as to the alleged impairment, Plaintiff lists various medical conditions he extracted from his medical records, and claims that the activity impaired is intense and/or vigorous physical activity.  (Ex. 9 – "can't perform intense physical activity;" Ex. 19 – "rigorous activity;" Ex. 29 – "perform intensive and vigorous physical activity.")  The Plaintiff has never alleged in his pleadings, or his discovery responses, or his deposition testimony that the alleged impairment of being unable to perform intense and/or vigorous physical activity constituted a major life activity; nor does he demonstrate how the alleged impairment of being unable to engage in intense and/or rigorous physical activity substantially limited any major life activity.

The Plaintiff submitted six grievances related to DOCCS denying his reasonable accommodation requests to be granted an accommodation to participate in SIP and/or the alternative to SIP.  Dkt. No. 107, Exhibits 10, 12, 15, 17, 24, 33.  The grievances do not contain any information as to how any of the medical conditions listed on his reasonable accommodation requests are impairments; nor how allegedly being unable to perform intense and/or vigorous physical activity constituted a major life activity; nor how this alleged major life activity is substantially impaired in any of the grievances he submitted.

Based on the foregoing, there is no triable issue of fact that the Plaintiff is not a qualified person with a disability.  Throughout Plaintiff's pleadings, and responses to discovery demands,

Plaintiff offers nothing more than a list of medical conditions extracted from his medical records in support of his assertion that he suffers from an impairment.   As far as the activity claimed to be impaired, Plaintiff has never offered anything more than "intense and/or rigorous physical activity," and he has never offered anything to support that said activity constitutes a major life activity.   Given the fact that the Plaintiff failed to specify the impairment he allegedly suffered from, or how any activity claimed to be impaired was a major life activity, he failed to demonstrate that any alleged impairment substantially limits any major life activity.   The Plaintiff has not offered any medical testimony, or an opinion from any medical professional, to support that he was a qualified person with a disability pursuant to the ADA at any point during his incarceration from July 2015 thru December 2018.  Defendants are entitled to summary judgment on Plaintiff's first and second causes of action alleging violations of the ADA and the Rehabilitation Act of 1973 against DOCCS.

## POINT II

### PLAINTIFF CANNOT RAISE A TRIABLE ISSUE OF FACT TO SUPPORT A CLAIM UNDER 42 U.S.C. § 1983

**A.  Plaintiff was not deprived of a constitutional right**

Liberty interests protected by the 14th Amendment may arise directly from the Due Process Clause itself or from the laws of the states.  *Klos v. Haskell*, 48 F.3d 81, *86 (U.S. Ct. Appeals 1995).  However, "lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Id*. (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  Thus, Courts haveheld that an inmate has no inherent liberty interest in commutation of his sentence (*Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)), in being paroled (*Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1 (1979)), or in receiving good time credit for satisfactory behavior while in prison (*Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).  *Id*.  There

is no enforceable liberty interest in participating in the SIP. *Enosken v. Squires*, 532 F. Supp. 3d 75, 93 (E.D.N.Y. 2021). There is no constitutional right to placement in a program which may expedite one's release from prison. *Matthews v. Thomas*, 2017 U.S. Dist. LEXIS 184550, *7 (N.D.N.Y. 2017); *see also McMillan v. Perez*, 2016 U.S. Dist. LEXIS 125812, *5 (S.D.N.Y. 2016).

A state may confer enforceable liberty interests on prisoners through its enactment of statutory or regulatory measures which place substantive limitations on prison officials' discretion. *Klos v. Haskell*, 48 F. 3d 81, *86 (2nd Cir. 1995). For a liberty interest to be conferred by the state, two requirements must be met; (1) the state must have articulated specified "substantive predicates" which limit the discretion of state officials; and (2) it must have employed "explicitly mandatory language," requiring state officials to follow those substantive predicates. *Id.* See also *Kentucky Dept's of Corrections v. Thompson*, 490 U.S. 454, 462 -63 (1989), *Wright v. Smith*, 21 F.3d 496, 498 (2nd Cir. 1994).

The statute and regulations pertaining to SIP place no limit on the Commissioner's decision to approve or disapprove an inmate's application for enrollment in the Shock program. *Klos*, 48 F.3d 81, *87. While a screening committee must review the inmate's application to determine whether the "inmate's participation in the shock incarceration program is consistent with the safety of the community, the welfare of the applicant and the rules and regulations of the department," (N.Y. Correct. Law § 867.2) and while the committee, if it finds the application in compliance with these requirements, "shall forward the application to the commissioner or his designee for approval or disapproval," (*Id.*) the statute is entirely silent on how the Commissioner is to exercise his discretion in approving or disapproving the forwarded application. *Klos, supra.* "Participation in the shock incarceration program shall be a privilege. Nothing contained in this article may be

construed to confer upon any incarcerated individual the right to participate or continue to participate therein."  (N.Y. Correct. Law § 867.5)

Based on the foregoing, Plaintiff was not deprived of any constitutional right, therefore, his 14th Amendment equal protection claim against all of the individual defendants in their individual capacity must be dismissed.

### B.  At all times referenced in Plaintiff's Complaint, the Defendants were acting in their official capacity and did not have the requisite "personal involvement".

To state a claim for individual liability under Section 1983, a plaintiff must demonstrate that the defendant had personal involvement in the alleged constitutional violation in order to establish a claim against such defendant in their individual capacity.  *Kantrowitz v. Uniondale Union Free Sch. Dist*., 822 F.Supp.2d 196, 218 (E.D.N.Y. 2011); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("[a]bsent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983") (citations omitted).  "[M]ere bald assertions and conclusions of law do not suffice."  *Davis v. County of Nassau*, 355 F.Supp.2d 668, 677 (E.D.N.Y. 2005) (citation and internal quotation marks omitted).

"[I]n order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States."  *Engleston v. Guido*, 41 F.3d 865, 876 (2d Cir. 1994) (internal quotations omitted), cert denied, 516 U.S. 808 (1995).  "The Equal Protection Clause of the 14th Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike."  *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (internal quotation marks omitted).  An equal protection claim under the 14th Amendment is proper where it is established that the person, compared with others similarly situated, was selectively

treated, and that the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *Id*. Plaintiff's 2nd Amended Complaint fails to allege a triable issue of fact that the individually named Defendants were "personally involved" in any violation of his 14th Amendment right to equal protection.

### Defendant Cluever

Counsel for Plaintiff deposed Defendant Cluever on March 23, 2022. Defendant Cluever is employed by DOCCS as a Offender Rehabilitation Aide ("ORA") assigned to the Greene Correctional Facility ("Greene C.F.") and has been so employed for approximately seven years. Exhibit 4, pgs. 8 – 9. Her duties consist of providing assistance to the Offender Rehabilitation Coordinators, submitting phone number requests, completing outside clearance forms, enrolling incarcerated individuals ("i/i") in the Shock Incarceration Program, completing Shock screening forms, and covering for the ORCs when they are unable to fulfill their duties as necessary. *Id*. Plaintiff sues Defendant Cluever in her individual capacity. Dkt. No. 107, ¶¶ 12 - 13, 95 – 97.

On or about July 24, 2007, Plaintiff executed a Shock Incarceration Program Memo of Agreement. Dkt. No. 107, Ex. 18. Defendant Cluever also signed the Memo of Agreement and submitted it to her supervisor pursuant to her duties as an ORA. She did not discuss the memorandum, nor plaintiff's handwritten note therein, with the plaintiff, her supervisor, or any other DOCCS personnel. Exhibit 4, pgs. 48 – 49.

On or about July 24, 2017, as part of her duties as an ORA, Defendant Cluever completed a Shock Incarceration Suitability Screening Form related to the Plaintiff. Dkt. No. 107, Ex. 20. She completed the form by accessing requisite information about the plaintiff utilizing various DOCCS computer screens, as well as his Presentence Investigation Report, his guidance folder

and his parole folder located within his DOCCS file.  Exhibit 4, pg. 53.  Defendant Cleuver

completed, or left blank, all numbered sections of the form except section number 13, "medical

status."  Exhibit 4, pgs. 55 – 65.  It was not part of her duties, as an ORA, to complete section 13.

*Id*.

On or about September 29, 2017, Plaintiff executed a Shock Incarceration Program

Memo of Agreement.  Dkt. No. 107, Ex. 28.  Defendant Cleuver also signed the Memo of

Agreement and submitted it to her supervisor pursuant to her duties as an ORA.  Exhibit 4, pgs.

72 – 73.  She did not discuss the memorandum, nor plaintiff's handwritten note therein, with the

plaintiff, her supervisor, or any other DOCCS personnel. Exhibit 4, pgs. 74 – 76.

On or about October 2, 2017, as part of her duties as an ORA, Defendant Cleuver

completed a Shock Incarceration Suitability Screening Form related to the Plaintiff.  Dkt. No.

107, Ex. 30.  She completed the form by accessing requisite information about the plaintiff

utilizing various DOCCS computer screens, as well as his Presentence Investigation Report, his

guidance folder, and his parole folder located within his DOCCS file.  Exhibit 4, pgs. 77 – 86.

Defendant Cleuver completed, or left blank, all numbered sections of the form except section

number 13, "medical status."  *Id*.  It is not part of her duties, as an ORA, to complete section 13.

*Id*.

In completing the Shock Suitability Screening Form, Defendant Cleuver does not have

discretion as to what she puts on the form. She simply relays information found on DOCCS

computer screens, and/or in the plaintiff's DOCCS file, on to the form.  Exhibit 4, pgs. 35, 55 –

65, 77 – 86. As an ORA at Greene Correctional Facility, she has nothing to do with incarcerated

individuals' requests for Reasonable Accommodations, nor the approval or denial thereof.

Exhibit 4, pgs. 21 – 22.  Any such requests received by Defendant Cleuver would be submitted

to her supervisor for handling.  Exhibit 4, pg. 49.  She would have completed the screening

forms in the same manner whether the Plaintiff requested an accommodation or not.  *Id*.

Defendant Cleuver never discussed the Plaintiff's request for reasonable accommodation with

anyone.  Exhibit 4, pgs. 44 – 45, 49 – 50, 87.

  As an ORA at Greene Correctional Facility, Defendant Cleuver has no role in

determining whether an incarcerated individual is suitable for the Shock Incarceration Program.

Exhibit 4, pgs. 8 – 9.  She is not informed as to whether an incarcerated individual is qualified, or

disqualified, for the program nor the reason therefore.  Ex. 4, pgs. 44 – 45, 67 – 68. She does not

know why Plaintiff was disqualified for Shock with reason code 99 on July 24, 2017, nor why

Plaintiff was disqualified for Shock with reason code 08 on October 13, 2017.  *Id*.  She had

nothing to do with those decisions.  *Id*.  In other words, she had no personal involvement in the

complained-of decisions.

  Based on the foregoing, Defendant Cleuver is entitled to summary judgment dismissing

the equal protection claims against her.  At all times referenced herein Defendant Cleuver was

acting in her official capacity as an ORA employed by DOCCS.  Plaintiff fails to raise a triable

issue of fact that Defendant Cleuver treated the Plaintiff any differently than she treated any

other i/i who was not court ordered to SIP and unable to participate in traditional SIP, or that she

discriminated against him in any way.  There is no genuine dispute that any conduct on the part

of Defendant Cleuver was motivated by discriminatory animus or ill will based on any alleged

disability of the Plaintiff.  Most significantly, the record establishes that Defendant Cleuver had

no personal role in making any decisions related to the Plaintiff at any point during his

incarceration at Greene C.F., and in particular his inclusion, or non-inclusion, in the Shock

program.  Exhibit 4.

**Defendant O'Hara**

Plaintiff's counsel deposed Defendant O'Hara on February 22, 2022.  Defendant O'Hara is employed by DOCCS as a Supervising Offender Rehabilitation Coordinator ("SORC") assigned to the Mohawk Correctional Facility since April 2018.  Exhibit 5, pg 14.  Prior to being assigned to Mohawk Correctional Facility she was assigned to Greene C.F beginning July 2016. Exhibit 5, pg. 17.  O'Hara's duties as a SORC are to supervise the guidance unit and community supervision.  Exhibit 5, pg. 14.  She is responsible for reviewing parole files prior to them going to the parole board and reviewing release paperwork upon an i/i's release.  Exhibit 5, pg. 61. While a SORC at Greene C.F. Defendant O'Hara had nothing to do with determining reasonable accommodation requests.  Exhibit 5, pg. 25. Plaintiff sues Defendant O'Hara in her individual capacity.  Dkt. No. 107, ¶¶ 20 - 21, 95 – 97.

As a SORC at Greene C.F., Defendant O'Hara received a list of i/i to screen for the SIP. Ex. 5, pg. 23.  The individuals go through the screening process and then watch a video. *Id*. They then accept or deny participation in SIP.  *Id*.  If they accept, a form is filled out and sent to medical to see if the i/ i is medically suitable for SIP.  *Id*.  Defendant O'Hara denied the Plaintiff participation in SIP because medical personnel at Greene C.F. said he was not suitable for SIP. Exhibit 5, pgs. 23 – 24.

On or about August 31, 2017, Defendant O'Hara wrote a memo to the Assistant Deputy Superintendent of Programs regarding one of Plaintiff's grievances as directed by her supervisor. Exhibit 6, pg. 25.  (Attached hereto and made a part hereof as Exhibit G is the memo.) Participants in SIP had to agree to be bound by the terms and conditions of the program.  Exhibit F, pg. 29, Ex. 6. In the memo, Defendant O'Hara stated that the Plaintiff's grievance should be denied because the Plaintiff did not agree to participate in the SIP unless he was granted a

reasonable accommodation.  Exhibit 6.  She also stated the Plaintiff's grievance should be denied because he did not meet the qualifications to participate in SIP pursuant to Corrections Law §§ 865 and 867, including that all participants are bound by the terms and conditions and are required to participate in daily p.t. and rigorous physical activity.  *Id*.  Pursuant to DOCCS policy, only i/i who were court ordered to participate in the SIP could participate in an alternative to the SIP if they were unable to participate in traditional SIP.  Exhibit 5, pg. 43.

Defendant O'Hara had no role in policy making at Greene C.F.  Exhibit 5., pg. 43.  Defendant O'Hara did not have anything to do with the SIP at Greene C.F. other than conducting screenings of i/i.  Ex. 5.  She did not determine that Plaintiff was not suitable for the SIP, medical personnel at Greene C.F. did.  Exhibit 5, pg. 31.  Defendant O'Hara did not have access to Plaintiff's medical records while at Greene C.F., she had to rely on medical personnel's determinations regarding SIP suitability.  *Id*.

While at Greene C.F., Defendant O'Hara did not have any role in making recommendations regarding release of i/i to community supervision.  Ex. 5, pg. 61.  Plaintiff's parole file indicates that the Plaintiff received merit time which earned him six months off of his sentence.  Exhibit 5, pg. 63.  Plaintiff's parole file further indicates that he was issued an earned eligibility certificate.  Exhibit 5, pg. 72.  Plaintiff completed Alcohol and Substance Abuse Treatment ("ASAT") as well as Aggression Replacement Training, phase one, while incarcerated at Greene C.F.  Exhibit 5, pg. 74.  The parole board commissioners make the determination as to whether an i/i will be granted parole.  Exhibit 5, pg. 76.

Based on the foregoing, Defendant O'Hara is entitled to summary judgment dismissing the equal protection claims against her.  At all times referenced herein Defendant O'Hara was acting in her official capacity as an SORC employed by DOCCS.  Plaintiff fails to raise a triable

issue of fact that Defendant O'Hara treated the Plaintiff any differently than she treated any other i/i who was not court ordered to SIP and unable to participate in traditional SIP, or that she discriminated against him in any way.  There is no genuine dispute that any conduct on the part of Defendant O'Hara was not motivated by discriminatory animus or ill will based on any alleged disability of the Plaintiff, and there is no proof or evidence in the record to support such an assertion.

Finally, Defendant O'Hara cannot be held liable by virtue of her status as a supervisory official.  A supervisory official "may not be held liable for damages merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Tangreti v. Bachmann*, the Second Circuit concluded that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).

*Tangreti* requires that Plaintiff allege and establish that a Defendant violated his rights "by [her] own conduct, not by reason of [her] supervision of others who committed the violation." 983 F.3d at 619. For supervisory Defendants, "a mere 'linkage' to the unlawful conduct through 'the prison chain of command' . . . is insufficient to show his or her personal involvement in that unlawful conduct." *Fabrizio v. Smith*, 2021 U.S. Dist. LEXIS 45856, 2021 WL 2211206, at *9 (N.D.N.Y. Mar. 10, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 102365, 2021 WL 2211023 (N.D.N.Y. June 1, 2021). O'Hara's mere role in responding to a grievance does not lead to liability under *Tangreti.*  The alleged failure to remedy a wrong committed, as Plaintiff alleges as to these Defendants, is insufficient after *Tangreti*, to establish their personal involvement.  *Neb Morrow v. Vanderwerff,* 2022 U.S. Dist.

LEXIS 2838, *8 (N.D.N.Y. Jan. 6, 2022); *Logan v. Graham*, 2021 U.S. Dist. LEXIS 185140, 2021 WL 4440344, at *4-5 (N.D.N.Y. Sept. 28, 2021).

### Defendant Fisher

Plaintiff' counsel deposed Defendant Fisher on March 21, 2022.  From approximately May 2015 until 2017 Defendant Fisher was the Assistant Deputy Superintendent of Programs ("ADSP") at Greene C.F.  Exhibit 3, pg. 10.  In this role, her duties were to do anything that the Deputy Superintendent of Programs directed her to do.  Exhibit 3, pg. 34.  She was in charge of the guidance unit, she was required to do rounds of the facility, she oversaw programs in the facility, she answered emails on behalf of the Deputy Superintendent of Programs, she signed off on transfer requests that the guidance unit sent, she assisted in reviewing parole board reports, she participated in temporary release committees and program committees, she attended disciplinary hearings, and dealt with personnel matters.  Exhibit 3, pg. 36.  Plaintiff sues Defendant Fisher in her individual capacity.  Dkt. No. 107, ¶¶ 14 - 15, 95 – 97.

Defendant Fisher was responsible for reviewing and signing off on completed SIP screenings.  Exhibit 3, pg. 38.  She reviewed them for accuracy, completeness and content.  Exhibit 3, pg. 39.  Defendant Fisher was also responsible for reviewing reasonable accommodation requests, sending them to medical, reviewing them when they were returned from medical, and making the determination as to grant or deny the request in conjunction with the Deputy Superintendent.  Exhibit 3, pg. 39 - 41.

The SIP is a privilege given to i/i who qualify and meet specific criteria.  Exhibit 3, pg. 46.  If they complete the six-month program the board of parole may release them at the end of the six months but they do not have to.  *Id*.  A Shock alternative program was designed for those individuals who were ordered by the court to attend Shock who for some reason had a physical

or mental disability, or for any other reason, could not attend the actual Shock program.  Exhibit 3, pg. 58.

On or about February 22, 2017, Defendant Fisher received a request for reasonable accommodation to participate in the Shock program submitted by the Plaintiff.  Dkt. No. 107, Ex. 9.  Defendant Fisher sent the request to medical personnel at DOCCS for their review. Exhibit 3, pg. 59.  Medical personnel at Greene C.F. indicated that the Plaintiff was not capable of participating in the SIP.  Exhibit 3, pg. 60.  Defendant Fisher relied on medical personnel's opinion that the Plaintiff was not capable of participating in SIP when she denied the Plaintiff's request.  Exhibit 3, pg. 61.  Defendant Fisher also denied the Plaintiff's reasonable accommodation request because the Plaintiff was not court ordered to Shock therefore, according to DOCCS policy, he was not eligible for the Shock alternative program.  Exhibit 3, pg. 63, 68.

On or about July 24, 2017, Defendant Fisher received a request for reasonable accommodation to participate in the Shock program submitted by the Plaintiff. Dkt. No. 107, Ex. 19. Defendant Fisher sent the request to medical personnel at DOCCS for their review.  Exhibit 3, pg. 73.  Medical personnel at Greene C.F. indicated that the Plaintiff's current medical regimen precludes Shock.  Dkt. No. 107, Ex. 19.  Defendant Fisher relied on medical personnel's opinion that the Plaintiff's current medical regimen precludes Shock.  Exhibit 3, pg. 74.  In denying Plaintiff's reasonable accommodation request, Defendant Fisher followed DOCCS policy that i/i who could not participate in Shock could participate in an alternative to Shock only if they were court ordered.  Exhibit 3, pp. 79, 91, 128.  Defendant Fisher denied the Plaintiff's requests for reasonable accommodation to participate in SIP because medical personnel at Greene C.F. said he was unsuitable for participation and because DOCCS policy did not allow him to participate in an alternative to SIP.

17

Based on the foregoing, Defendant Fisher is entitled to summary judgment dismissing the equal protection claims against her.  At all times referenced herein Defendant Fisher was acting in her official capacity as an ADSP employed by DOCCS.  Plaintiff fails to raise a triable issue of fact that Defendant Fisher treated the Plaintiff any differently than she treated any other i/i who was not court ordered to SIP and unable to participate in traditional SIP, or that she discriminated against him in any way.  There is no genuine dispute that any conduct on the part of Defendant Fisher was not motivated by discriminatory animus or ill will based on any alleged disability of the Plaintiff, and there is no proof or evidence in the record to support such an assertion.

## Defendant Hammond

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant Hammond.  Dkt. No. 107.  In fact, Defendant Hammond is only referenced in ¶¶ 12 – 13 of the Complaint wherein it is alleged that she "functions as the Deputy Superintendent of Programs at Greene C.F." (Dkt. No. 107, ¶ 12); and that "Ms. Hammond, in her individual capacity……is legally responsible for ensuring proper placement in programs or services for eligible and qualified inmates so that they may benefit from its rehabilitative components."  (Dkt. No. 107, ¶ 13.)  In response to Defendants' Interrogatory request to describe each and every occasion on which the Plaintiff alleges his constitutional rights were violated by Defendant Hammond, the Plaintiff simply referred to his response to Interrogatory number one which pertained to Defendant Anthony Annucci.  Plaintiff's responses to Defendants' first set of Interrogatories is attached hereto and made a part hereof as Exhibit "1".  Defendant Hammond was not deposed by Plaintiff's counsel, and discovery in this matter is closed.

Plaintiff's Complaint, and Plaintiff's discovery responses, fail to allege that Defendant Hammond had any personal involvement in determining what programming the Plaintiff engaged in while incarcerated at Greene C.F., or granting or denying any reasonable accommodation requests Plaintiff submitted, nor do they allege that Defendant Hammond subjected the Plaintiff to unequal treatment, or that any conduct on the part of Hammond was motivated by discriminatory animus or ill will based on the Plaintiff's alleged disability.  Dkt. No. 107.  Thus, Defendant Hammond lacks the requisite personal involvement, and claims against this Defendant should be dismissed pursuant to *Tangreti v. Bachmann*, *supra.*

Plaintiff's 2nd Amended Complaint, and responses to discovery demands, fail to demonstrate that Defendant Hammond had the requisite personal involvement in order to establish a claim against her in her individual capacity.  "[M]ere bald assertions and conclusions of law do not suffice."  *Davis v. County of Nassau*, 355 F.Supp.2d 668, 677 (E.D.N.Y. 2005) (citation and internal quotation marks omitted).  Therefore, Plaintiff has failed to raise a triable issue of fact regarding the personal liability of Defendant Hammond; and Defendant Hammond is entitled to summary judgment dismissing Plaintiff's 14th Amendment equal protection claim against her.

## **Defendant L. Mardon**

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant L. Mardon.  Dkt. No. 107.  In fact, Defendant Mardon is only referenced in ¶¶ 18 – 19 of the Complaint wherein it is alleged that she "functions as a Senior/Supervising Offender Rehabilitator Coordinator at Greene C.F." (Dkt. No. 107, ¶ 18); and that "L. Mardon, in her individual capacity……duties consist of but are not limited to coordinating rehabilitative efforts to ensure eligible and qualified inmates benefit from programs or services through screening and suitability and overseeing the conduct and behavior of subordinate Offender Rehabilitation

Coordinators." (Dkt. No. 107, ¶ 19.) In response to Defendants' Interrogatory request to describe each and every occasion on which the Plaintiff alleges his constitutional rights were violated by Defendant Mardon, the Plaintiff simply referred to his response to Interrogatory number one which pertained to Defendant Anthony Annucci. Plaintiff's responses to Defendants' first set of Interrogatories is attached hereto and made a part hereof as Exhibit "1". Defendant Mardon was not deposed by Plaintiff's counsel, and discovery in this matter is closed.

Plaintiff's 2nd Amended Complaint, and Plaintiff's discovery responses, fail to allege that Defendant Mardon had any personal involvement in determining what programming the Plaintiff engaged in while incarcerated at Greene C.F., or granting or denying any reasonable accommodation requests Plaintiff submitted, nor do they allege that Defendant Mardon subjected the Plaintiff to unequal treatment, or that any conduct on the part of Hammond was motivated by discriminatory animus or ill will based on the Plaintiff's alleged disability. Dkt. No. 107.

Plaintiff's 2nd Amended Complaint, and responses to discovery demands, fail to demonstrate that Defendant Mardon had the requisite personal involvement in order to establish a claim against her in her individual capacity. *Tangreti v. Bachmann*, *supra.* "[M]ere bald assertions and conclusions of law do not suffice." *Davis v. County of Nassau,supra.* Therefore, Defendant Mardon is entitled to summary judgment dismissing Plaintiff's 14th Amendment equal protection claim against her.

### Defendant Commissioner Anthony Annucci

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant Anthony Annucci. Dkt. No. 107. In fact, Defendant Annucci is only referenced in ¶¶ 6 – 7 of the Complaint wherein it is alleged that he functions as the Commissioner of DOCCS (Dkt. No. 107, ¶ 6) and, in his individual capacity, he is legally responsible for the overall operations and

20

policies of the department including Greene C.F. (Dkt. No. 107, ¶ 8).  In response to Defendants'

Interrogatory request to describe each and every occasion on which the Plaintiff alleges his

constitutional rights were violated by Defendant Annucci, the Plaintiff replied, "Plaintiff lists the

following dates and violations of the Equal Protection Clause of the 14th Amendment," and went

on to repeat the allegations contained in Plaintiff's Complaint, none of which assert any personal

involvement of Defendant Annucci.  Plaintiff's responses to Defendants' first set of

Interrogatories is attached hereto and made a part hereof as Exhibit "1".  Defendant Annucci was

not deposed by Plaintiff's counsel, and discovery in this matter is closed.

As set forth above, Plaintiff's 2nd Amended Complaint, and responses to discovery

demands, fail to demonstrate that Defendant Annucci had the requisite personal involvement in

order to establish a claim against him in his individual capacity. *Tangreti v. Bachmann*, *supra.* All

claims against Annucci should be dismissed.

## Defendant M. Noriega

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant M.

Noriega.  Dkt. No. 107.  In fact, Defendant Noriega is only referenced in ¶¶ 24, 25, 49 of the

Complaint and none of those paragraphs allege that Defendant Noriega had any personal

involvement in determining what programming the Plaintiff engaged in while incarcerated at

Greene C.F.; or granting or denying any reasonable accommodation requests Plaintiff submitted.

(Dkt. No. 107, ¶¶ 24, 25, 49.)  Neither Plaintiff's Complaint nor interrogatory responses allege

that Defendant Noriega was in a position to make any decisions regarding any matter affecting or

relating to the Plaintiff, nor does it allege that Defendant Noriega subjected the Plaintiff to

unequal treatment, or that any of Noriega's conduct was motivated by discriminatory animus or

ill will based on the Plaintiff's alleged disability.  Dkt. No. 107; Ex. "1".

Plaintiff's 2nd Amended Complaint, and responses to discovery demands, fail to demonstrate that Defendant Noriega had the requisite personal involvement in order to establish a claim against her in her individual capacity. *Tangreti v. Bachmann*, *supra.* All claims against Noriega should be dismissed.

### Defendant Rehabilitation Coordinator Welytok

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant Welytok.  Dkt. No. 107.  In fact, Defendant Welytok is only referenced in ¶¶ 26, 27, 45, 46 of the Complaint and none of those paragraphs allege that Defendant Welytok had any personal involvement in determining what programming the Plaintiff engaged in while incarcerated at Greene C.F.; or granting or denying any reasonable accommodation requests Plaintiff submitted. (Dkt. No. 107, ¶¶ 24, 25, 49.)  Neither Plaintiff's Complaint, nor interrogatory responsest allege that Defendant Welytok was in a position to make any decisions regarding any matter affecting or relating to the Plaintiff, nor does it allege that Defendant Welytok subjected the Plaintiff to unequal treatment, or that any of Welytok's conduct was motivated by discriminatory animus or ill will based on the Plaintiff's alleged disability.  Dkt. No. 107; Ex. "1".

Plaintiff's 2nd Amended Complaint, and responses to discovery demands, fail to demonstrate that Defendant Welytok had the requisite personal involvement in order to establish a claim against her in her individual capacity. *Tangreti v. Bachmann*, *supra.* All claims against Welytok should be dismissed.

### Defendant Assistant Commissioner Bryan Hilton

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant Hilton.  Dkt. No. 107.  In fact, Defendant Hilton is only referenced in ¶¶ 8, 9 of the Complaint

wherein it is alleged that he functions as the Assistant Commissioner of DOCCS (Dkt. No. 107, ¶ 8) and, in his individual capacity, he is legally responsible for the operations and policies of the department including Greene C.F. (Dkt. No. 107, ¶ 9).  Neither Plaintiff's Complaint, nor Interrogatory responses,  allege any conduct on the part of Defendant Hilton that subjected the Plaintiff to unequal treatment, n or that any of Hilton's conduct was motivated by discriminatory animus or ill will based on the Plaintiff's alleged disability.  Dkt. No. 107; Ex. "1".

Plaintiff's 2nd Amended Complaint, and responses to discovery demands, fail to demonstrate that Defendant Hilton had the requisite personal involvement in order to establish a claim against her in hid individual capacity. *Tangreti v. Bachmann*,  *supra.* All claims against Hilton should be dismissed.

### Deputy Superintendent Brandon Smith

Plaintiff's 2nd Amended Complaint does not contain any allegations against Defendant Brandon Smith.  Dkt. No. 107.  In fact, Defendant Smith is only referenced in ¶¶ 10, 11 of the Complaint wherein it is alleged that he functions as the Superintendent of Greene C.F. (Dkt. No. 107, ¶ 10) and, in his individual capacity, he is legally responsible for the management of subordinates, for the decisions, conduct, and behavior of all employees under his command; and that he is responsible for rendering decisions on grievance complaints submitted by the inmate population. (Dkt. No. 107, ¶ 11).  Neither Plaintiff's Complaint, nor his interrogatory responses, allege any conduct on the part of Defendant Smith that subjected the Plaintiff to unequal treatment or that any of Smith's conduct was motivated by discriminatory animus or ill will based on the Plaintiff's alleged disability.  Dkt. No. 107; Ex. "1".

Plaintiff's 2nd Amended Complaint, and responses to discovery demands, fail to demonstrate that Defendant Smith had the requisite personal involvement in order to establish a

claim against her in hid individual capacity. *Tangreti v. Bachmann*, *supra*. All claims against Smith should be dismissed.

### C. The Plaintiff was not subject to unequal treatment

As Plaintiff has repeatedly acknowledged since the commencement of this lawsuit, during the time period that Plaintiff was incarcerated individuals who were not court ordered to participate in the SIP, and who were unable to participate in SIP for a mental, or physical reason, were not able to participate in alternative SIP.  Dkt. No. 107, ¶ 33.  Pursuant to statute, the only time that the Commissioner could not exercise his discretion in approving or disapproving a SIP application was for those inmates who were court ordered to the SIP. (N.Y. Correct. Law 867.2-a) The plaintiff was not court ordered.  Dkt. No. 107, ¶ 37.  DOCCS treated the Plaintiff the same as they treated all other incarcerated individuals who were not court ordered to participate in SIP, and who were unable to participate in SIP.  *See* Exhibits 3, 4, 5, Smith Declaration.

### POINT III

### <u>PLAINTIFF'S CLAIM IS BARRED BY THE ELEVENTH AMENDMENT DOCRTINE OF SOVEREIGN IMMUNITY</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subject of any Foreign State."  U.S. Const. amend. XI.  The doctrine of sovereign immunity bars federal courts from hearing any suit brought against a State or State agency absent the State's consent or a valid abrogation of the State's sovereign immunity by Congress.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, (1984); *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private

individuals in federal court.")  The State of New York has not waived its sovereign immunity from suits for damages under the ADA.  See *Jones v. N.Y.State Metro Developmental Disabilities Servs.*, 543 Fed. Appx. 20, 22 (2d Cir. 2013).

To determine that a federal statute validly abrogates a state's sovereign immunity, the Court must find both that Congress unequivocally intended to abrogate sovereign immunity, and that Congress acted pursuant to constitutional authority in doing so.  See Bd. of Trs. v. *Garrett*, 531 U.S. 356, 363 – 364 (Sup. Ct. 2001)**.**  Regardless of its intent, Congress must act pursuant to a "valid grant of constitutional authority" in abrogating a state's sovereign immunity.  See *Tennessee v. Lane*, 541 U.S. 509, 517 -518 (2004) ("Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment.").  In the context of the ADA, the authority to abrogate a state's sovereign immunity arises out of the Fourteenth Amendment, which permits Congress to "enforce, by 'appropriate legislation' the constitutional guarantee that no State shall deprive any person of 'life, liberty or property, without due process of law,' nor deny any person 'equal protection of the laws.'"  See *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 108 (2d Cir. 2001) (citing City of *Boerne v. Flores*, 521 U.S. 507, 517 (1997)).

The issue of whether the ADA validly abrogates a state's sovereign immunity, such that a plaintiff may recover money damages against a state defendant in his official capacity, has been addressed several times by the Supreme Court and Second Circuit.  In *Garcia*, the Second Circuit held that a plaintiff may maintain a claim for money damages under Title II of the ADA against a state official, acting in his official capacity, only where the plaintiff has established that "the Title

II violation was motivated by either discriminatory animus or ill will due to [his] disability."  See *Garcia*, 280 F.3d at 111.

Following *Garcia*, the Supreme Court in *United States v. Georgia*, further defined the contours of ADA abrogation, holding that "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *United States v. Georgia*, 546 U.S. 151 (2006) (emphasis in original).  Under *Georgia*, courts must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Georgia*, 546 U.S. at 159.  Thus, the *Georgia* court "explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment."  See *Dean v. University of Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 194-195 (2d Cir. 2015).

In *Bolmer v. Oliveira*, the Second Circuit revisited the issue of ADA abrogation, and held that Garcia's "discriminatory animus" requirement applies only where abrogation is used to enforce the Equal Protection Clause of the Fourteenth Amendment.  See *Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010).  Relying on the Supreme Court's holding in Georgia, the Second Circuit held that a plaintiff need not prove "discriminatory animus" where he seeks to enforce other aspects of his substantive due process rights under the Fourteenth Amendment.  *Id*.  Although this line of cases leaves the ADA abrogation standard somewhat unsettled, "[w]hat is clear, is that after *Georgia*, sovereign immunity will be abrogated under Title II when a plaintiff can

demonstrate an actual Fourteenth Amendment violation."  See *Hilton v. Wright*, 928 F.Supp. 2d 530, 556 (N.D.N.Y. Mar. 11, 2013) (finding that the state's sovereign immunity was abrogated where "the same conduct which violates Title II also violates the Eighth Amendment.").

Here, Plaintiff seeks money damages under the ADA against DOCCS and the individual Defendants in their individual capacities.  Dkt. No. 107, pgs. 18 – 21.  On its face, this claim is barred by the Eleventh Amendment doctrine of sovereign immunity.  Furthermore, this case does not present a circumstance in which the State's sovereign immunity should be abrogated.

Plaintiff's ADA claim arises out of the Equal Protection clause because he complains that he was not afforded reasonable accommodations for a disability to enable him equal access to the programs or services at his correctional facility.  Therefore, the State's sovereign immunity may only be abrogated where plaintiff can establish that the defendants acted with "discriminatory animus or ill will" toward his disability.  See *Kearney v. N.Y.S.D.O.C.S*, 2013 U.S.Dist. LEXIS 140932, at*26 (N.D.N.Y. July 31, 2013) (an inmate's claim that he was denied a reasonable accommodation under the ADA is "grounded in the Equal Protection clause of the Fourteenth Amendment" and therefore he is required to demonstrate "discriminatory animus or ill will" toward his disability to overcome the State's sovereign immunity).  The evidence belies any assertion that the defendants, or any other DOCCS personnel, acted with "discriminatory animus or will will" toward plaintiff's alleged disability.  See *Ramrattan v. Fischer*, 2015 U.S.Dist. LEXIS 74510, at *13 (N.D.N.Y. June 9, 2015) (granting defendant's motion to dismiss where plaintiff failed to allege "any discriminatory animus, or that he was excluded from any public service because of ill will against his disability.")

Furthermore, even if the Court applies the *Georgia* analysis, the circumstances of this case still do not present any basis for abrogation.  The record shows that defendants fully complied with

the dictates of Title II of the ADA and the Fourteenth Amendment.  As discussed above, plaintiff fails to state a viable claim under Title II because he is not a "qualified individual with a disability" under the strict requirements of the ADA.  Therefore, Plaintiff cannot satisfy the first prong of the *Georgia* court's abrogation analysis by identifying some aspect of the State's conduct that violated Title II, since he does not qualify for Title II protection in the first place.  "[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end."  *Mary Jo C. v. N.Y.State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013).

However, even if Plaintiff could be regarded as a "qualifying individual with a disability," he still fails to satisfy the second and third prongs of the *Georgia* analysis, which require plaintiff to prove either a violation of his Fourteenth Amendment rights or an independent Title II violation sufficient to abrogate immunity.  First, the Plaintiff was not deprived of a constitutional right. Second, the Plaintiff was treated the same as all other incarcerated individuals who were not court ordered to the SIP.  However, even if the Plaintiff were able to prove that he was selectively treated, he is unable to prove any discriminatory animus or ill will on behalf of any Defendant.  The record wholly dispels any claim that defendants violated Plaintiff's Fourteenth Amendment rights or discriminated against him in violation of Title II.

In sum, there is no basis to conclude that the State's sovereign immunity should be abrogated.  Accordingly, this action is barred by sovereign immunity and should be dismissed in its entirety.

## CONCLUSION

Pursuant to the foregoing, Defendants are entitled to summary judgment dismissing the 2nd Amended Complaint in its entirety with prejudice.

Dated: Albany, New York
May 1, 2023

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    Attorney for Defendants
                                    The Capitol
                                    Albany, New York 12224

                                    By: *s/ Stacey Hamilton*
                                    Stacey Hamilton
                                    Assistant Attorney General, of Counsel
                                    Bar Roll No. 510484
                                    Telephone: (518) 776-2288
                                    Email: Stacey.Hamilton@ag.ny.gov

cc: Teresa Caturano via ECF
    Geoffrey Schotter via ECF