UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHAUN GOODALL,

                    Plaintiff,

          -v-                              9:19-CV-1359

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, COMMISSIONER
ANTHONY ANNUCCI, ASSISTANT
COMMISSIONER BRYAN HILTON,
SUPERINTENDENT BRANDON
SMITH, DEPUTY SUPERINTENDENT
MARIE HAMMOND, ASSISTANT
DEPUTY LAURIE FISHER, FACILITY
HEALTH SERV DOREEN SMITH,
REHABILITATOR COOR. L. MARDON,
REHABILITATOR COOR. L. O'HARA,
REHABILITATOR COOR. A. CLUEVER,
REHABILITATOR COOR. M. NORIEGA,
and REHABILITATOR COOR. WELYTOK,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

GEOFFREY SCHOTTER, ESQ.             GEOFFREY SHOTTER, ESQ.
Attorneys for Plaintiff
65 Lenox Road #1E
Brooklyn, NY 11226

DISABILITY RIGHTS NEW YORK         TERESA CATURANO, ESQ.
Attorneys for Plaintiff
279 Troy-Schenectady Rd, Ste 9, #236
Rensselaer, NY 12144

HON. LETITIA JAMES
New York State Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

STACEY A. HAMILTON, ESQ.
ADRIENNE J. KERWIN, ESQ.
Ass't Attorneys General

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

On January 23, 2019, Shaun Goodall ("Goodall" or "plaintiff"), proceeding

*pro se*, filed this civil rights action in the U.S. District Court for the Eastern

District of New York.  Dkt. No. 1.  Broadly speaking, plaintiff's complaint

alleged that defendants New York State Department of Corrections and

Community Supervision ("DOCCS") and eleven DOCCS officials[1] (collectively

"defendants") discriminated against him on the basis of his disability when

they denied his access to a "shock" treatment program at Greene Correctional

Facility.  *Id.*  Along with his complaint, plaintiff also sought leave to proceed

*in forma pauperis* ("IFP Application").  Dkt. No. 2.

On April 11, 2019, U.S. District Judge Kiyo Matsumoto granted Goodall's

IFP Application and directed him to show cause why this action should not be

---

[1] Individual defendants include Acting Commissioner Anthony Annucci, Assistant
Commissioner Bryan Hilton, Superintendent Brandon Smith, Deputy Superintendent Marie
Hammond, Assistant Deputy Superintendent Laurie Fisher, Facility Health Services Director
Doreen Smith, and Rehabilitation Coordinators L. Mardon, L. O'Hara, A. Cluever, M. Noriega, and
Welytok.

transferred to the Northern District of New York.  Text Minute Entry for 4/11/19.  Thereafter, plaintiff retained counsel, Dkt. No. 8, filed an amended complaint, Dkt. No. 9, perfected service, Dkt. No. 63, and then briefed the issue of transfer, Dkt. Nos. 70, 73.  Ultimately, Judge Matsumoto transferred the action to this Court on November 5, 2019.  Dkt. No. 77.

On December 6, 2019, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6) to dismiss Goodall's amended complaint in its entirety.  Dkt. No. 87.  According to defendants, they were immune from most of plaintiff's claims.  *Id.*  To the extent they were not, they argued that plaintiff's claims failed on the merits because he was ineligible for the "shock" program at issue.  *Id.*  That motion was fully briefed, Dkt. Nos. 89, 90, and then granted in part and denied in part on March 21, 2020, Dkt. No. 91, and defendants answered the remaining claims, Dkt. No. 92.

However, on September 30, 2020, Goodall moved under Rules 15(a) and 16(b) to file a second amended complaint.  Dkt. No. 101.  Defendants did not oppose.  Dkt. No. 102.  Accordingly, U.S. Magistrate Judge Christian F. Hummel granted plaintiff's motion to amend on June 21, 2021.  Dkt. No. 106.

Goodall's three-count second amended complaint alleges that defendants discriminated against him by denying him participation in DOCCS's Shock Incarceration Program (the "SIP"), or an equivalent program, in violation of:

(1) Title II of the Americans with Disabilities Act (the "ADA"); (2) Section 504 of the Rehabilitation Act (the "Rehabilitation Act"); and (3) his Fourteenth Amendment equal protection rights.  Dkt. No. 107.  Defendants answered, Dkt. No. 109, and the parties completed two more years of discovery.

On April 30 and May 1, 2023, following the close of discovery, the parties cross-moved for summary judgment.  Dkt. Nos. 159, 161.  Goodall, for his part, moved for partial summary judgment on his ADA and Rehabilitation Act claims.  Dkt. No. 159.  Defendants, for their part, moved to dismiss the second amended complaint in its entirety.  Dkt. No. 161.

Both motions have been fully briefed and will be considered on the basis of the submissions without oral argument.[2]

## II. <u>BACKGROUND</u>

This factual narrative has been developed from the parties' respective statements of material facts.  Importantly, it is limited to those facts that are well-supported by accurate citations to the record, and any attached exhibits.  Disputed facts have been flagged.  Because the parties have cross-

---

[2] As part of his response in opposition, Goodall sought to strike certain portions of a declaration submitted by defendants.  Dkt. No. 175.  Thereafter, defendants sought to strike plaintiff's reply papers.  Dkt. Nos. 183, 184, 185.

moved for summary judgment, these disputes are described from each party's point of view.

### A. **Goodall's Impairments**

Goodall contends that he suffers from several physical and mental impairments. *See* Plaintiff's Statement of Additional Material Facts ("Pl.'s Add'l Facts"), Dkt. No. 175-2 ¶¶ 1–12; *see also* Ex. 2 to Hamilton Decl., Dkt. No. 161-4 at 120.[3]  First, plaintiff asserts that he suffers from a myoclonic seizure disorder that subjects him to involuntary muscle twitches, making him unsteady in his movements and prone to falls during active episodes. Pl.'s Add'l Facts ¶¶ 1–2.  Second, plaintiff contends that he suffers from back pain that makes it difficult for him to sleep, stand, lift, and sit for sustained periods of time. *Id.* ¶ 4.

Third, Goodall asserts that he was diagnosed with heart impairments, including tachycardia, hypertension, and heart disease. Pl.'s Add'l Facts ¶ 12; Ex. 2 to Hamilton Decl. at 98–104, 126–28.  Plaintiff maintains that these conditions cause him to experience sharp chest pains or the feeling that he is going to faint when engaging in strenuous physical activity. Pl.'s Add'l Facts ¶ 5; Ex. 2 to Hamilton Decl. 104–07, 126–28.  Fourth, plaintiff contends that he has flat feet. Pl.'s Add'l Facts ¶ 6.  Plaintiff asserts that his flat feet

---

[3] Pagination corresponds to CM/ECF header.

impact his balance and cause him excruciating pain, making it difficult for him to run as fast and far as others. *Id.*; Ex. 2 to Hamilton Decl. at 124–26.

Fifth, Goodall maintains that he suffers from a hiatal hernia and gastroesophageal reflux disease ("GERD"). *See* Plaintiff's Statement of Material Facts ("Pl.'s Facts"), Dkt. No. 159-105 ¶¶ 7–8, 12, 14, 23–25; Ex. 2 to Hamilton Decl. at 118. Plaintiff asserts that his hiatal hernia and GERD cause him to experience extreme nausea. Ex. 2 to Hamilton Decl. at 118–123. And sixth, Goodall contends that suffers from mental illness. *See* Pl.'s Add'l Facts ¶¶ 7–11. In particular, plaintiff asserts that he has an adjustment disorder, a depressive disorder, and an antisocial personality disorder. *See id.*; Ex. 2 to Hamilton Decl. at 110–18. According to plaintiff, these disorders cause him to experience depression and anxiety and engage in self-injurious behaviors. *See* Ex. 2 to Hamilton Decl. at 112–18.

## B. **Goodall's Incarceration**

On July 24, 2015, Goodall was sentenced to an indeterminate prison term of three to six years after pleading guilty to the felony of robbery in the third degree. Pl.'s Facts ¶¶ 1–2; Defendants' Statement of Material Facts ("Defs.' Facts"), Dkt. No. 173-1 ¶ 1. Plaintiff was initially received into DOCCS custody at Ulster Correctional Facility ("Ulster"). Pl.'s Facts ¶ 3. But the

following month, plaintiff was transferred to Greene Correctional Facility in Coxsackie, New York ("Greene").  *Id.* ¶ 4.

On October 23, 2015, Goodall signed a form declining to participate in the SIP; *i.e.*, the shock incarceration program.[4]  Defs.' Facts ¶ 6.  The SIP is a six-month, early release, discipline and treatment-oriented program provided to incarcerated individuals who meet certain eligibility requirements.  Pl.'s Facts ¶¶ 31–32, 39, 48–50; Ex. 56 to Schotter Decl., Dkt. No. 159-57 at 5, 7, 11.  According to plaintiff, he signed the declination form because he was ineligible to participate in the program as a result of: (1) Ulster medical staff indicating in his medical records that he is "not a Shock candidate;" and (2) being classified as a medical service level of "two" and a mental health service level of "three."[5]  *See* Defs.' Facts ¶ 11; Pl.'s Resp. ¶ 11.  The form plaintiff signed stated that he would not be reconsidered for the program unless he

---

[4]  Goodall contends that he was not offered an opportunity to participate in the SIP, but "was offered an opportunity to be screened for consideration for SIP enrollment."  Pl.'s Response to Defs.' Facts (Pl.'s Resp."), Dkt. No. 175-2 ¶ 6.  Nevertheless, plaintiff concedes that he declined the opportunity to be screened.  *See id.*

[5]  A medical service level of two indicates that an individual has "stable, non-life threatening conditions" and can be housed in a facility with physicians on site or on call twenty-four hours a day, and nursing staff during the day shift.  Pl.'s Facts ¶ 10.  A mental health service level of three indicates that an individual "[m]ay benefit from brief psychotherapy and psychiatric medication."  *Id.* ¶ 11.

contacted his Offender Rehabilitation Coordinator ("ORC") directly.  Defs.'
Facts ¶ 7.

Throughout 2017, while incarcerated at Greene, Goodall submitted three
separate requests for a reasonable accommodation to participate in the SIP.
Pl.'s Facts ¶ 99.  Plaintiff's requests, the ultimate denials of his requests, and
the grievances he filed in response to the denials, are discussed *infra*.

**1.  Goodall's First Reasonable Accommodation Request**

On February 19, 2017, Goodall submitted his first request for a reasonable
accommodation to participate in the SIP.  Pl.'s Facts ¶¶ 101–02; Defs.' Facts
¶ 8.  On the request form, plaintiff asserted that he cannot perform intense
physical activity due to suffering from: a myocardial infarction; a serious
mental disorder; multiple cardiac risk factors; hernias; GERD; heart disease;
and flat feet.  Pl.'s Facts ¶ 103; Defs.' Facts ¶ 8.

Defendant Laurie Fisher ("Fisher"), the Assistant Deputy Superintendent
of Programs ("ADSP") at Greene, received Goodall's request form.  Pl.'s Facts
¶ 104.  Fisher sent plaintiff's request form to defendant Dr. Doreen Smith
("Dr. Smith"), the Facility Health Services Director of Greene, to conduct a
medical review of plaintiff's request.  *Id.* ¶ 106.  Dr. Smith filled out the
medical verification section of the form and indicated that plaintiff has a
seizure disorder and cannot engage in heavy lifting.  *Id.* ¶ 107.  Dr. Smith

returned the form to the office of the Deputy Superintendent of Programs ("DSP").  *Id.* ¶ 111.

On March 17, 2017, Fisher denied Goodall's first request.  Pl.'s Facts ¶ 112; Defs.' Facts ¶ 9.  In this denial, Fisher noted that admission to the SIP "is not a reasonable accommodation," and admission to the program is "based on screening performed by guidance unit and eligibility requirements."  Pl.'s Facts ¶ 115; Defs.' Facts ¶ 9.  As the basis for this finding, Fisher relied on Dr. Smith's opinion that plaintiff's medical conditions rendered him incapable of successfully participating in the program.  Pl.'s Facts ¶¶ 113, 119.

On March 20, 2017, Goodall grieved the denial of his first request to participate in the SIP by submitting an Inmate Grievance Complaint ("IGC"), assigned #GNE 9243-17.  Pl.'s Facts ¶ 162; Defs.' Facts ¶ 10.  In this first IGC, plaintiff asserted that the denial of his request was improper and in violation of the ADA.  Pl.'s Facts ¶ 162; Defs.' Facts ¶ 10.  Plaintiff also requested to be permitted entry into the SIP "or its alternative."  Ex. 64 to Schotter Decl., Dkt. No. 159-65 at 2.

On March 21, 2017, Goodall wrote a letter to his assigned ORC; his assigned rehabilitation coordinator, defendant Welytok.  Defs.' Facts ¶ 11.  In this letter, plaintiff stated that his request to participate in the SIP was denied because there are no accommodations for prisoners who are not court-

ordered into the program.  Ex. 11 to Compl., Dkt. No. 107 at 48.  Plaintiff also asserted that he initially signed the form declining to participate in the SIP screening process because he was ineligible to participate.  *See* Defs.' Facts ¶ 11; Pl.'s Resp. ¶ 11.  Plaintiff noted that the form notified him that he would not be considered for the program unless he informed his ORC directly.  Ex. 11 to Compl., Dkt. No. 107 at 48.  Finally, plaintiff's letter to Welytok asserted that he was asking to be considered for participation in the SIP or "the alternative program."  *Id.*

On March 28, 2017, Acting Supervising Rehabilitation Coordinator ("SORC") Dugon ("Dugon") sent a memorandum to Fisher regarding Goodall's grievance #GNE 9243-17.  Pl.'s Facts ¶ 163; Ex. 66 to Schotter Decl., Dkt. No. 159-67 at 2.  In this memorandum, Dugon asserted that:

> [P]er Directive #0086, inmates are only eligible for the Shock program if they meet eligibility requirements due to the physical intensity of Shock.  Alternative Shock is only available to inmates who are court-ordered Shock and do not meet the eligibility requirements.  Since Inmate Goodall is not court-ordered Shock, Grievance is denied.

Ex. 66 to Schotter Decl. at 2.  Fisher reviewed and approved this memo on March 30, 2017.  *Id.*

On April 13, 2017, Dugon sent a memorandum to defendant Hammond, the Deputy Superintendent, about Goodall's grievance #GNE 9243-17.  Pl.'s

Add'l Facts ¶¶ 27–28; Ex. 17 to Caturano Decl, Dkt. No. 175-20 at 2.  Dugon

stated in this memorandum that:

> Inmate Goodall met with SORC Mardon to review his
> denial for a Reasonable Accommodation in March.
> When he wrote to ORC Welytok, who was no longer his
> counselor, the letter was forwarded to his new ORC,
> Ms. Noriega.  When Ms. Noriega received the letter,
> she brought it to SORC Mardon.  As Ms. Mardon was
> aware of the situation (i.e. she reviewed the denial
> with him and knew the situation was in the grievance
> stage), she knew the question was asked and answered
> by Program Services and no further action was needed
> as it was being handled by the Grievance Department.
> As stated to Inmate Goodall during his Reasonable
> Accommodation denial review as well as the other
> response to this grievance, Inmate Goodall is not
> eligible to participate in Alternative Shock.

Ex. 17 to Caturano Decl. at 2.  Fisher reviewed and approved this memo on

April 14, 2017.  *Id.*

On April 24, 2017, Greene Superintendent, defendant Brandon Smith

("Superintendent Smith"), denied Goodall's grievance #GNE 9243-17.  Pl.'s

Facts ¶ 164; Ex. 67 to Schotter Decl., Dkt. No. 159-68 at 2.  In this denial,

Superintendent Smith stated that:

> The investigation provided indicates the grievant
> declined participation in SHOCK on 10/23/15.  [Fisher]
> noted on the RA request that a request for SHOCK is
> not a reasonable accommodation.  Shock admission is
> based on screening performed by Grievance Unit and
> eligibility requirements.   Staff responded to the

> grievant's inquiries regarding this matter and informed him he is not eligible for the program.

Ex. 67 to Schotter Decl. at 2.

On April 28, 2017, Goodall appealed the denial of #GNE 9243-17.  Ex. 67 to Schotter Decl. at 2.  In this appeal, plaintiff stated that when he initially declined participation in the SIP: he did so in order to avoid injury per advice from the medical department; DOCCS medical staff had previously stated that he was not a Shock candidate; he was not eligible to participate in the SIP due to his medical and mental health service level classifications; and no reasonable accommodation to the SIP was offered as an alternative.  *Id.*; *see also* Pl.'s Facts ¶¶ 9–11; Defs.' Facts ¶ 13.

On May 23, 2017, Fisher sent Goodall a letter notifying him that he was ineligible for participation in the SIP Alternative Program.  Defs.' Facts ¶ 14. Fisher asserted in the letter that plaintiff was ineligible because he refused participation in the SIP in 2015 and the alternative program is only available to inmates who are court-ordered to participate in the SIP.  Ex. 14 to Compl., Dkt. No. 107 at 54.

On July 5, 2018, the Inmate Grievance Program Central Office Review Committee ("CORC") upheld Superintendent Smith's denial of #GNE 9243-

17.  Pl.'s Facts ¶ 165.  In confirming the denial of Goodall's grievance, the

CORC asserted that:

> [T]he Shock Incarceration Program is a privilege, not
> a right, and that an inmate must meet all of the
> requirements in order to be considered eligible for the
> program.  It is noted that the grievant voluntarily
> refused participation in Shock on 10/23/15, and that he
> was subsequently screened and found to be ineligible
> for participation for medical reasons on 10/13/17.
> CORC further notes that there is no court order for
> him to be enrolled in Shock, and that there is no
> requirement in Directive #0086 to afford him
> alternative placement.

*Id.*

## 2. Goodall's Second Reasonable Accommodation Request

On July 20, 2017, Goodall submitted his second request for a reasonable

accommodation to participate in the SIP.  Pl.'s Facts ¶¶ 120–21; Defs.' Facts

¶ 18.  In his request, plaintiff asserted that he was limited in his ability to

engage in rigorous activity due to suffering from: epilepsy; heart disease;

GERD; flat feet; hernias; and hypertension.  Pl.'s Facts ¶ 122; Defs.' Facts ¶

18.  The specific accommodation plaintiff requested was "a change in the

environment, policies or procedures, or the manner in which tasks are

performed, that enables me to participate with disability."  Pl.'s Facts ¶ 123;

Defs.' Facts ¶ 18.

Fisher received Goodall's request form.  Pl.'s Facts ¶¶ 124–25.  Thereafter,

Fisher sent the form to the medical department for medical verification.  *Id.* ¶

125.  Dr. Smith filled out the medical verification section of the form,[6] noting

that plaintiff's "medical regime precludes shock."  *Id.* ¶ 126; Ex. 14 to

Schotter Decl., Dkt. No. 159-15 at 26–29.  Dr. Smith then returned the form

to Fisher.  Pl.'s Facts ¶ 131.

On August 14, 2017, Fisher denied Goodall's second request.  Pl.'s Facts ¶

132.  As explanation for the denial, Fisher asserted that "shock eligibility

cannot be determined or granted through a reasonable accommodation."  *Id.*

¶ 131; Ex. 16 to Schotter Decl., Dkt. No. 159-17 at 2.  In denying plaintiff's

second request, Fisher relied on Dr. Smith's "medical verification at face

value" and finding that plaintiff's medical regime precluded participation in

the SIP.  Pl.'s Facts ¶ 131.  Fisher asserts that she did not consider whether

any reasonable accommodations would permit plaintiff's participation in the

---

[6]  Defendants assert that Goodall has not established that Dr. Smith completed the medical
verification section.  Defs.' Response to Pl.'s Facts (Defs.' Resp."), Dkt. No. 174-1 ¶ 126.  However, Dr.
Smith admits in her declaration that she completed the portion of this form.  *See* Smith Decl., Dkt.
No. 161-13 ¶ 16.

program because only inmates who were court-ordered to participate in the SIP had access to the alternative program.[7]  *Id.* ¶¶ 132–33.

On August 21, 2017, Goodall grieved the denial of his second request to participate in the SIP by submitting another IGC, this one assigned #GNE 9507-17.  Pl.'s Facts ¶ 166; Ex. 69 to Schotter Decl., Dkt. No. 159-70 at 2–3. In this second IGC, plaintiff asserted that the decision to deny him admission to the SIP violated the ADA and his right to be free from discrimination on the basis of a disability.  Ex. 69 to Schotter Decl. at 3.  Plaintiff's second grievance also requested to be enrolled into the SIP "with a change in environment, policies or procedures, or the manner in which tasks are completed that enables me, with my disability, to participate in SHOCK or be provided the alternative program."  *Id.*

On August 31, 2017, defendant L. O'Hara ("O'Hara"), a SORC, sent Fisher a memorandum regarding grievance #GNE 9507-17.  Pl.'s Facts ¶ 167; Ex. 70 to Schotter Decl., Dkt. No. 159-71 at 2–4.  In this memorandum, O'Hara asserted that:

> This grievance should be denied as Inmate Goodall did not agree to participate in the program as presented. He would ONLY participate if he was given a

---

[7]  Shortly after receiving Goodall's second request, Fisher asked Superintendent Smith if she could speak with plaintiff "regarding his reasonable accommodations request to see if [they] could assist him some other way or point him in another direction."  Pl.'s Facts ¶ 138.  Superintendent Smith told Fisher that it was not a good idea "to engage [plaintiff] because he was thought to be litigious."  Ex. 52 to Schotter Decl., Dkt. No. 159-53 at 82.

> Reasonable Accommodation. This grievance should also be denied based on inmate not meeting the qualifications described in the SHOCK manual under Corrections Law § 865 and 867 including that all participates are bound by the terms and conditions and are required to participate in daily P.T. and rigorous physical activity.

Ex. 70 to Schotter Decl. at 2. Fisher reviewed and approved this memo on September 1, 2017. *Id.*

On September 12, 2017, the Inmate Grievance Resolution Committee ("IGRC") responded to grievance #GNE 9507-17. Pl.'s Facts ¶ 168; Ex. 71 to Schotter Decl., Dkt. No. 159-72 at 2. In their response, the IGRC stated that:

> Committee notes that grievant has filed previous complaints in this matter which are already pending CORC. It was determined grievant was unsuitable for SHOCK participation. It is not expected that any further action will be taken based on the submission of additional complaints regarding the same issue. Committee agrees that DOCCS should have a medical alternative to SHOCK even if this requires changes to state statutes.

Ex. 71 to Schotter Decl. at 2.

On October 13, 2017, a screening form, reflecting Goodall's suitability for participation in the SIP, was completed. Defs.' Facts ¶ 28. The form set forth that plaintiff was ineligible to participate in the SIP because he is "medically unsuitable" for the program due to his "medical condition." *Id.* ¶ 31; Pl.'s

Facts ¶ 152; Ex. 55 to Schotter Decl., Dkt. No. 159-56 at 13–18.  Defendants

Cluever, O'Hara and Mardon signed the form.  Pl.'s Facts ¶ 152.

On October 20, 2017, Superintendent Smith denied grievance #GNE 9507-

17.  Pl.'s Facts ¶ 171; Ex. 76 to Schotter Decl., Dkt. No. 159-77 at 2.  In his

denial, Superintendent Smith asserted that:

> Grievant's request for reasonable accommodations
> was denied on 8/14/17 by [Fisher].  SHOCK eligibility
> cannot be determined or granted through a reasonable
> accommodation.  Per Central Office direction grievant
> was subsequently rescreened for SHOCK.  It was
> determined on 10/13/17 that grievant was medically
> unsuitable for SHOCK.  Although grievant was
> screened for participation in SHOCK this was not
> court ordered at sentencing.  It was recommended.
> Participation in SHOCK alternative is only possible
> when SHOCK is court ordered.

Ex. 76 to Schotter Decl. at 2.

On February 6, 2019, the CORC upheld the denial of #GNE 9507-17.  Pl.'s

Facts ¶ 172; Ex. 77 to Schotter Decl., Dkt. No. 159-78 at 2.  In asserting that

the matter of #GNE 9507-17 is closed, the CORC asserted that:

> Upon full hearing of the facts and circumstances in the
> instant case, the grievant's action requested in hereby
> denied, as CORC considers the issue moot.
>
> CORC notes that Directive #4040, § 701.3 requires
> that "An inmate must be personally affected by the
> policy or issue he or she is grieving, or must show that
> he or she will be personally affected by that policy or
> issue unless some relief is granted or changes made."

> CORC notes that the grievant was Conditionally
> Released to Community Supervision on 12/26/18. Due
> to this change in circumstances, the grievant is no
> longer personally affected by the issues raised in the
> instant complaint.

Ex. 77 to Schotter Decl. at 2.

### 3. **Goodall's Third Reasonable Accommodation Request**

On September 25, 2017, Goodall sent his third request for a reasonable accommodation to participate in the SIP. Pl.'s Facts ¶ 147; Defs.' Facts ¶ 24. In his request, plaintiff asserted that he was limited in his ability to perform intensive and vigorous physical activity due to: documented heart disease and multiple cardiac risk factors; myoclonic epilepsy; hiatal hernia, GERD; and flat feet. Pl.'s Facts ¶ 151; Defs.' Facts ¶ 24. The specific accommodation plaintiff requested was "a change in environment, policy or procedure or manner in which tasks are performed that enables me to participate with a disability." Pl.'s Facts ¶ 152.

On September 29, 2017, Goodall submitted a memorandum of agreement to participate in the SIP. Pl.'s Facts ¶ 146; Defs.' Facts ¶ 25. In submitting the memorandum, plaintiff attached his third request for a reasonable accommodation to participate in the program, dated September 25, 2017. *See* Ex. 63 to Schotter Decl., Dkt. No. 159-64 at 2–3; Ex. 51 to Schotter Decl., Dkt.

No. 159-51 at 13–17.  Plaintiff altered the memorandum by handwriting that he was ineligible to participate in the SIP without an accommodation because the medical department determined that he is "not a SHOCK candidate," and Dr. Smith "stated in a 7/24/17 Reasonable Accommodation application that 'medical regimen precludes shock.'"  Defs.' Facts ¶ 26; Ex. 63 to Schotter Decl. at 2.

On October 19, 2017, Hammond marked Goodall's third request as being received.  Pl.'s Facts ¶ 157.  This was four days after, as mentioned *supra*, the suitability screening form disqualified plaintiff from participating in the SIP due to him being "medically unsuitable" for the program.  *Id.* ¶¶ 151, 157; Defs.' Facts ¶¶ 28, 31.

On October 24, 2017, Dr. Smith completed the medical verification portion of Goodall's third request.  Pl.'s Facts ¶ 158; Defs.' Facts ¶ 26.  In this portion of the form, Dr. Smith stated that plaintiff suffers from "myoclonic episodes," and noted that "current medical condition precludes strenuous program activities."  Pl.'s Facts ¶ 158; Defs.' Facts ¶ 26; Ex. 62 to Schotter Decl., Dkt. No. 159-63 at 2.

On October 27, 2017, Goodall grieved the denial of his third request to participate in the SIP by submitting an IGC that was assigned #GNE 9608-

17.[8]  Pl.'s Facts ¶ 173; Ex. 78 to Schotter Decl. at 2–3.  In this third IGC,

plaintiff asserted that:

> On 10/27/17 I received a response from the FOIL
> Officer at Greene Correctional Facility, indicating: "In
> response to your letter, the Reasonable
> Accommodation form from 9/29/17 has not been
> received completed yet."  On 10/24/17 I again received
> correspondence from the FOIL Officer stating: "In
> regards to the completed Reasonable Accommodation,
> there has been no indication by staff as to when this
> will be complete."  Due to the undue delay and/or
> refusal to render a decision and no indication as to
> when this will be complete, I'm hereby treating these
> actions as a denial . . . .
>
> Presently, DOCCS offers no possibility of a Reasonable
> Accommodation for prisoners who are not court-
> ordered to SHOCK – such as mental health treatment
> or a physical disability – to allow participation into the
> program.  This decision to deny me admission and a
> Reasonable Accommodation twice previously and now
> violates my rights to be free from discrimination on the
> basis of a disability and violates my rights under the
> Americans with Disability Act, Title II.

Ex. 78 to Schotter Decl. at 2–3.  The action plaintiff requested was "to be

permitted entry into the SHOCK program or its alternative so that I may

benefit the same as an individual without a disability, complete the SHOCK

---

[8]  #GNE 9608-17 also concerned Goodall being disqualified from participation in the SIP due to being deemed "medically unsuitable" on October 13, 2017.  *See* Ex. 78 to Schotter Decl., Dkt. No. 159-79 at 2–3.

program, and be released early on parole to enjoy my freedom as healthy

individuals now are." *Id.* at 3.

On November 8, 2017, O'Hara sent Fisher a memorandum regarding

#GNE 9608-17.  Pl.'s Facts ¶ 174.  In this memorandum, Fisher wrote:

> This grievance should be denied as Inmate Goodall did
> not agree to participate in the program as presented.
> He would ONLY participate if he was given a
> Reasonable Accommodation.  This grievance should
> also be denied based on inmate not meeting the
> qualifications described in the SHOCK manual under
> Corrections Law § 865 and 867 including that all
> participates are bound by the terms and conditions
> and are required to participate in daily P.T. and
> rigorous physical activity.

Ex. 79 to Schotter Decl., Dkt. No. 159-80 at 2.  Fisher reviewed and approved

this memo on November 8, 2017.  *Id.*

On December 19, 2017, Hammond denied Goodall's third request.  Defs.'

Facts ¶ 27.  As explanation for the denial, Hammond asserted that "Shock

requires the participant to engage in physical exercise and drills.  Inmate

does not qualify for exemption from this requirement." *Id.*

On December 20, 2017, Superintendent Smith responded to grievance

#GNE 9608-17.  *See* Ex. 80 to Schotter Decl., Dkt. No. 159-81 at 2.

Superintendent Smith asserted that:

> Although grievant was screened for participation in
> SHOCK this was not court ordered at sentencing.  It

> was recommended. Participation in SHOCK alternative is only possible when SHOCK is court ordered.
>
> Although this would not have changed the outcome it is acknowledged that the grievant's request for reasonable accommodations was not handled in a timely fashion. The timely handling of these is being addressed by facility administration.

*Id.* However, Superintendent Smith affirmed grievance #GNE 9608-17 "only to the extent that the [Reasonable Accommodation] request was not handled in a timely fashion." *Id.*

On December 23, 2017, Goodall appealed Superintendent Smith's response to grievance #GNE 9608-17. *See* Ex. 80 to Schotter Decl. at 2. As justification for his appeal, plaintiff asserted that "disability discrimination is evident in that prisoners who volunteer for the SHOCK program while eligible are permitted to participate. Meanwhile, prisoners who volunteer but have a disability are excluded participation/benefits. A clear violation of the ADA, Title II." *Id.*

On April 10, 2019, the CORC denied grievance #GNE 9608-17. *See* Ex. 81 to Schotter Decl., Dkt. No. 159-82 at 2. In the denial, the CORC stated that:

> [T]he grievant's concerns regarding the Shock Incarceration Program were addressed in its prior decisions GNE-9243-17 and GNE-9507-17, dated 7/5/18 and 2/6/19, respectively. CORC again asserts that the Shock Incarceration Program is a privilege,

not a right, and that an inmate must meet all of the requirements in order to be considered eligible for the program. It is noted that the grievant voluntarily refused participation in Shock on 10/23/15, and that he was subsequently screened and found to be ineligible for participation for medical reasons on 10/13/17. CORC further notes that there is no court order for him to be enrolled in Shock, and that there is no requirement in Directive #0086 to afford him alternative placement.

With respect to the grievant's appeal, CORC notes that DOCCS has compiled with all rules and regulations with regard to the administration of the Shock Incarceration Program, and finds no discrimination or malfeasance by staff. In addition, CORC notes that he was Conditionally Released to Community Supervision on 12/26/18.

*Id.* Plaintiff was released from DOCCS custody at Greene on December 26, 2018. *Id.* He filed this civil rights action about a month later. Dkt. No. 1.

## III. <u>LEGAL STANDARD</u>

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

"Where, as here, the parties have cross-moved for summary judgment, a reviewing court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *United States v. Bedi*, 453 F. Supp. 3d 563, 570 (N.D.N.Y. 2020) (cleaned up).  "In undertaking this analysis, it bears noting that a district court is not required to grant judgment as a matter of law for one side or the other." *Id.*

## IV.  **DISCUSSION**

There are two motions for summary judgment pending: Goodall's motion for partial summary judgment on his ADA and Rehabilitation Act claims; and defendants' motion for summary judgment seeking dismissal of plaintiff's complaint in its entirety.  *See* Dkt. Nos. 159, 161.

## A. **Threshold Matters**

Before turning to the merits of Goodall's claims, there are a few threshold issues that require attention.

### 1. **Goodall's Statement of Material Facts**

First, defendants argue that Goodall's Statement of Material Facts does not comply with Local Rule 56.1 because several of its facts rely on exhibits that are outside of the record.  Defs.' Opp'n, Dkt. No. 174 at 6–7.  In support of this argument, defendants assert that the declaration of plaintiff's counsel improperly describes the exhibits by using only their so-called "Bates" page number.[9]  *See id.*  Accordingly, defendants contends that plaintiff's motion for summary judgment must be denied.  *Id.* at 7.

Upon review, this request must be denied.  Pursuant to Local Rule 56.1, "[a]ny motion for summary judgment shall contain a separate Statement of Material Facts."  N.D.N.Y. L.R. 56.1(a).  The Statement of Material Facts "shall set forth . . . a short and concise statement of each material facts about which the moving party contends there exists no genuine issue," and "[e]ach listed fact shall set forth a specific citation to the record where the fact is established."  *Id.*

---

[9]  A Bates number is just a shorthand way of describing a system of sequentially numbering a collection of pages from different documents.  It can be particularly helpful when the underlying documents being referenced already have their own conflicting pagination.

Importantly, "[t]he record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits." N.D.N.Y. L.R. 56.1(a). Defendants have failed to set forth any basis on which to conclude that the exhibits cited by Goodall's counsel are in fact "outside" of the record. To the contrary, the exhibits at issue appear to be part of the record. Plaintiff points out that one of the exhibits was obtained from DOCCS prior to the litigation and was attached to his complaint, and the remaining exhibits were produced by defendants in discovery. *See* Pl.'s Reply, Dkt. No. 182 at 10–11. As a result, defendants have failed to establish that plaintiff has relied on exhibits not properly within the record. Accordingly, defendants' argument must be rejected.[10]

## 2. **Defendants' Statement of Material Facts**

Goodall also argues that defendants' motion for summary judgment does not comply with this District's Local Rules. Pl.'s Opp'n, Dkt. No. 175-1 at 9–12. In particular, plaintiff maintains that several paragraphs of defendants' Statement of Material Facts "do not meet the substantive requirements of Rule 56 because they fail to provide citations to the admissible evidence of

---

[10] Defendants also argue that several paragraphs of Goodall's Statement of Material Facts rely on exhibits that do not clearly establish the alleged facts asserted, fail to abide by the requirement that each numbered paragraph contains a short and concise statement of each material fact, and set forth facts wholly irrelevant to the matter. These objections have already been considered in setting forth the factual narrative of this case. To the extent that this request conflicts with those facts, it is denied.

record to support each fact." *Id.* at 9. Accordingly, plaintiff requests that the paragraphs be stricken and defendants' motion be denied in full. *Id.* at 9–12.

First, Goodall argues that paragraphs ninety through ninety-six contain citations to exhibits outside of the record. *See* Pl.'s Opp'n at 10. A review of these paragraphs indicates that plaintiff may be correct. These exhibits are referenced by only their Bates page number and do not appear to be attached to defendants' motion. *See* Defs.' Facts ¶¶ 90–96.

Consequently, it cannot be determined which exhibits defendants are referring to or, ultimately, whether those exhibits actually support the facts being asserted. Notably, however, these challenged paragraphs also contain citations to two other exhibits that defendants *have* attached to their motion papers. Therefore, these paragraphs will not be stricken. Instead, the facts asserted in these paragraphs will be disregarded unless they are supported by the other exhibits on which defendants have appropriately relied.

Second, Goodall argues that paragraphs thirty-seven through forty-three and eighty-five through eighty-eight contain citations that improperly lack specificity. *See* Pl.'s Opp'n at 10–11. Upon review, plaintiff's argument must be accepted. These paragraphs are citations to plaintiff's deposition. This proceeding occurred over two days. A separate transcript was generated for each day. *See* Ex. 2 to Hamilton Decl., Dkt. Nos. 161-4, 161-5.

Despite this complexity, the paragraphs challenged by Goodall do not specify the date on which they rely. *See* Defs.' Facts ¶¶ 37–43, 85–88. This failure by defendants to provide specific citations makes it difficult to determine whether the facts asserted in these paragraphs are actually supported by plaintiff's testimony. Even so, these paragraphs will not be stricken. Instead, the facts asserted in these challenged paragraphs will not be considered unless the Court is readily able to locate the support for them in the available deposition testimony.[11]

### 3. **Goodall's Motion to Strike**

Finally, Goodall has moved to strike statements made by Dr. Smith in a declaration filed in support of defendants' motion. Pl.'s Opp'n at 12–19. In particular, plaintiff asserts that Dr. Smith's statements should be stricken because they: (1) are conclusory or misleading; (2) lack a basis of knowledge; (3) contain inadmissible speculation; (4) contain improper legal conclusions; (5) are in conflict with prior deposition testimony; (6) contain incomplete prejudicial characterizations; and (7) are in direct contradiction with other evidence in the record. *See id.*

---

[11] Third, Goodall asserts that defendants have not cited to their Statement of Material facts in their memorandum of law. Pl.'s Opp'n at 11. While defendants' failure to do so complicates the summary judgment process, defendants' motion will not be denied on this basis.

Under Rule 56(c)(4), "[w]hen it comes to a non-expert fact witness, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *Krul v. DeJoy*, --F. Supp. 3d--, 2023 WL 8449589, at *17 (N.D.N.Y. Dec. 6, 2023) (quoting FED. R. CIV. P. 56(c)(4)).

"[A] court may strike those portions of a declaration that are not made upon the declarant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) (citing *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995)). Alternatively, a court may "simply disregard portions of an affidavit or affirmation that are not based on personal knowledge or that are otherwise inadmissible." *Krul*, 2023 WL 8449589, at *18 (collecting cases).

Upon review, the latter approach is the better course of action under the circumstances. Accordingly, any of the statements made by Dr. Smith in her declaration that are improper will be disregarded and not be relied upon in construing the factual narrative of this case. Accordingly, Goodall's motion to strike must be denied.

**B.  <u>Summary Judgment</u>**

Goodall's second amended complaint sets forth three causes of action: (1) a violation of the ADA against DOCCS; (2) a violation of the Rehabilitation Act against DOCCS; and (3) a violation of his equal protection rights against the individual defendants, in their individual capacities, pursuant to 42 U.S.C. § 1983.  *See* Compl. ¶¶ 77–97.

**1.  <u>ADA & Rehabilitation Act</u>** (Counts One & Two)

In his first and second causes of action, Goodall maintains that DOCCS discriminated against him in violation of the ADA and the Rehabilitation Act by refusing him participation in the SIP, or an equivalent program, because of his disabilities.  Compl. ¶¶ 77–93.  Plaintiff asserts that his reasonable accommodation requests were denied due to DOCCS's policy of permitting only court-ordered inmates, who do not meet the eligibility requirements of the SIP, to participate in an alternative program.[12]  *See id.*  Plaintiff argues that the denial of his requests deprived him of "rehabilitative programming and wrongfully subjected him to prolonged incarceration."  Pl.'s Mem. at 8.

---

[12]  The Court notes that this policy is no longer in effect.  Goodall asserts that DOCCS has since expanded the "SIP alternative placement to non-court-ordered inmates and the applicable medical and mental health suitability screens."  Pls.' Opp'n at 32.  Thus, plaintiff's claims allege completed harms, not ongoing ones.

Both plaintiff and defendants seek summary judgment on these claims. *See id.* at 9–37; Defs.' Mem. at 7–13.

"Title II of the ADA 'proscribes discrimination against the disabled in access to public services.'" *Cox v. (DOCCS) NYS Dep't of Corr.*, --F. Supp. 3d--, 2023 WL 3300496, at *8 (N.D.N.Y. May 8, 2023) (quoting *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)). "The statute provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Id.* (citing *Harris*, 572 F.3d at 73). Likewise, Section 504 of the Rehabilitation Act provides "that no otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting 29 U.S.C. § 794(a)). "Because the standards under both statutes are generally the same and the subtle distinctions between the statutes are not implicated in this case, 'we treat claims under the two statutes identically.'" *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

To establish a violation under the ADA and the Rehabilitation Act, a New York State prisoner must demonstrate "that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).

Defendants do not challenge the second and third elements required to show a violation of the ADA and Rehabilitation Act, that DOCCS is a public entity subject to both acts and that Goodall was excluded from participating in the SIP due to a disability. *See* Defs.' Mem. at 9–13. Instead, defendants assert that plaintiff has failed to demonstrate the first element, that he is a qualified individual with a disability under the acts. *See id.*

The ADA and Rehabilitation Act both define the term "disability" with respect to an individual as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1) (ADA); 29 U.S.C. § 705(20)(B) (Rehabilitation Act).

To establish a disability under prong (A), "a plaintiff must: (1) 'show that [ ]he suffers from a physical or mental impairment'; (2) 'identify the activity claimed to be impaired and establish that it constitutes a major life activity'; and (3) 'show that h[is] impairment substantially limits the major life activity previously identified.'"  *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020), *aff'd*, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) (quoting *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 147 (2d Cir. 2002)).

Major life activities include, *inter alia*, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function."  42 U.S.C. § 12102(2).

In determining whether a major life activity is substantially limited by an impairment, "courts consider 'the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long[-]term impact.'"  *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (summary order) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 57 (2d Cir. 2005)).

In support of their motion, defendants argue that there is no triable issue of fact as to whether Goodall is a qualified individual with a disability. Defs.' Mem. at 9–13. In defendants' view, plaintiff has failed to establish that he suffers from a "physical or mental impairment" because he has only offered "a list of medical conditions extracted from his medical records in support of his assertion that he suffers from an impairment." *Id.* at 13. Defendants also argue that the record lacks evidence tending to show that plaintiff's alleged impairments substantially limit a major life activity. *Id.* According to defendants, plaintiff "has never offered anything more" than his assertion that "intense and/or rigorous physical activity" qualifies as a major life activity, but he "has never offered anything to support that [this] activity constitutes a major life activity." *Id.*

Goodall argues that evidence in the record conclusively establishes that he is a qualified individual with a disability. Pl.'s Mem. at 11–15; Pl.'s Opp'n at 21–26. In support of this argument, plaintiff relies on testimony from his deposition detailing the impairments he suffers from and the limitations they pose.[13] Pl.'s Opp'n at 21–22. Specifically, plaintiff testified that he suffers

---

[13] Goodall also relies on medical records in which medical staff indicated that he suffers from multiple conditions; his medical and mental health service level classifications; the denials of his reasonable accommodation requests; the fact that he was prescribed medications to treat his impairments; and that he was not assigned to work in the mess hall and was assigned to sleep in a bottom bunk in order to mitigate the risk of harm from seizures and falls. *See* Pl.'s Mem. at 11–15; Pl.'s Opp'n at 23–24.

from: (1) a seizure disorder that subjects him to involuntary muscle twitches that make him unsteady in his movements and prone to falls during active episodes; (2) chronic back pain that causes him difficulty sleeping, standing, lifting, and sitting for sustained periods of time; (3) heart conditions that cause him to experience sharp chest pains or the feeling that he is going to faint when engaging in strenuous physical activity; (4) flat feet that negatively impact his balance and cause him excruciating pain, making it difficult for him to run as fast and far as others; (5) mental impairments that cause him to experience depression and anxiety, and engage in self-injurious behaviors.  *See id.*; *see also* Pl.'s Add'l Facts ¶¶ 1–12.  In plaintiff's view, the evidence, at the very least, creates a triable issue of fact as to whether he is a qualified individual with a disability.  Pl.'s Opp'n at 26.

Upon review, the parties' motions for summary judgment on Goodall's ADA and Rehabilitation Act claims must be denied.  Viewing the facts in the light most favorable to plaintiff, a reasonable jury could find that he suffers from an impairment that substantially limits a major life activity.  However, plaintiff's factual showing is far from sufficient to establish this element as a matter of law.  Therefore, this amounts to a genuine dispute of material fact that precludes the grant of either party's motion.  And because there is a triable issue of fact as to the threshold question of whether Goodall suffers

from a qualifying disability, the Court need not address plaintiff's remaining arguments in support of summary judgment. Accordingly, plaintiff's ADA and Rehabilitation Act claims will remain for trial.

As a final matter, defendants argue that Goodall's ADA claim is barred by sovereign immunity. *See* Defs.' Mem. at 30–34. This is a difficult question, but the Court previously addressed it at the motion-to-dismiss stage. Briefly stated, in *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that the ADA's abrogation of state sovereign immunity is valid as long as the particular claim that a plaintiff brings seeks damages for conduct that "actually violates the Fourteenth Amendment." *Id.* at 159. For the reasons explained below, plaintiff's § 1983 equal protection claim remains for trial and therefore plaintiff's ADA claim will not be dismissed on the basis of sovereign immunity.

**2.  Equal Protection** (Count Three)

In his third claim, Goodall argues that the individual defendants, in their individual capacities, violated his equal protection rights "by failing to place him in the same SIP alternative program in which it placed court-ordered individuals who were otherwise similarly situated to [him]." Pl.'s Opp'n at 27; *see also* Compl. ¶¶ 94–97. Plaintiff asserts that the individual defendants were acting pursuant to DOCCS's "facially discriminatory" policy of excluding

non-court-ordered inmates, who are medically unsuitable for the SIP, from participating in the alternative program. Pl.'s Opp'n at 27–28. Defendants seek summary judgment on this claim. *See* Defs.' Mem. at 13–30.

"The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any persons within its jurisdiction the equal protection of the laws.'" *Kuiken v. Cnty. of Hamilton*, 669 F. Supp. 3d 119, 125 (N.D.N.Y. 2023) (quoting U.S. CONST. amend. XIV, § 1).

To prove a violation of the Equal Protection Clause, a plaintiff must show: (1) adverse treatment of individuals compared with other similarly situated individuals; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464, 474 (2d Cir. 2008) (citing *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)).

In addition, a plaintiff must show that the disparity in treatment cannot withstand the appropriate level of scrutiny. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). As relevant here, "[i]t is well-settled that laws that discriminate on the basis of disability are subject to rational-basis review and upheld so long as there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Doe v. Zucker*, 520 F.

Supp. 3d 217, 267 (N.D.N.Y. 2021), *aff'd sub nom.*, *Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022) (cleaned up).

Goodall's equal protection claim is brought under § 1983.  "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

"The Second Circuit has held that 'personal involvement' under § 1983 means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" *Busch v. Cnty. of Erie*, 2022 WL 1460022, at *4 (W.D.N.Y. May 9, 2022) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

However, in *Tangreti v. Bachmann*, the Second Circuit clarified that there is no special test for supervisor liability under § 1983.  *See* 983 F.3d 609, 618–19 (2d Cir. 2020).  Instead, a plaintiff must show that the supervisor, through the supervisor's own individual actions, violated the Constitution.  *Id.* at 616 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 868 (2009)).  A supervisor can only be held liable "if that supervisor participates directly in the alleged

constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred." *Id.* at 617 n.4.

Defendants argue that Goodall's equal protection claim must be dismissed because none of the individual defendants were personally involved in the alleged violation of plaintiff's equal protection rights.[14] Defs.' Mem. at 15–30. In opposition, plaintiff maintains that there is a genuine issue of material fact as to each individual defendants' personal involvement.[15] *See* Pl.'s Opp'n at 30–40.

### a. **Acting Commissioner Annucci**

Goodall argues that a reasonable fact-finder could conclude that Annucci was personally involved in the alleged violation because, as the Acting DOCCS Commissioner, Annucci "maintained the agency-wide policy whereby

---

[14] In addition to their arguments as to each individual, defendants make two fairly conclusory arguments. First, they argue that dismissal is warranted because "[t]here is no enforceable liberty interest in participating in the SIP." Defs.' Mem. at 13–14. In making this argument, defendants rely on cases discussing due process violations. *See id.* But Goodall claims his equal protection rights were violated. Accordingly, this argument must be rejected. Second, they argue that these equal protection claims must be dismissed because plaintiff was not subjected to any unequal treatment. *Id.* at 30. But viewed in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff was treated differently than similarly situated individuals. Thus, this argument must also be rejected.

[15] Defendants argue, without filing a separate motion, that pursuant to Rule 37, Goodall should be precluded from relying on certain evidence pertaining to the personal involvement of the individual defendants. Defs Reply, Dkt. No. 181 at 5–8. Defendants assert that this evidence must be disregarded because plaintiff failed to properly supplement his responses to interrogatory requests asking for evidence of the individual defendants' personal involvement. *Id.* However, defendants have not shown that the evidence they seek to exclude was not made known to them during the discovery process. *See* Fed. R. Civ. P. 26(e) (requiring supplement of a disclosure where the additional information "has not otherwise been made known to the other parties during the discovery process or in writing"). Thus, defendants' argument must be denied.

only court-ordered inmates who were deemed medically unsuitable for SIP were placed in the SIP alternative program."  Pl's Opp'n at 31.

In support of this argument, Goodall contends that Annucci: (1) approved and signed DOCCS Directive 0086 that was in effect during his incarceration; (2) promulgated the rules and regulations for the SIP; and (3) had authority to designate DOCCS facilities where the SIP would be administered.  Pl's Opp'n at 31–32.

Viewing the facts in the light most favorable to Goodall, there is a genuine issue of material fact as to Annucci's personal involvement.  As noted *supra*, personal involvement can be established by evidence of an official's creation of a policy or custom under which unconstitutional practices occurred.  *See Robinson v. Phillips*, 2023 WL 3170389, at *2 (N.D.N.Y. May 1, 2023) (citing *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 322–23 (N.D.N.Y. 2023)).

As applied here, a reasonable jury could find that Annucci was responsible for implementing the policy at issue here; *i.e.*, that the alternative to the SIP is only made available to inmates who are court-ordered to participate in the

program and do not meet the SIP eligibility requirements.  Thus, Goodall's §
1983 claim against Annucci remains for trial.

**b.  <u>Associate Commissioner Hilton</u>**

Goodall argues that a reasonable fact-finder could conclude that Hilton
was personally involved in the alleged violation because, as the Associate
Commissioner of DOCCS, Hilton "maintained the agency-wide policy
whereby only court-ordered inmates who were deemed medically unsuitable
for SIP were placed in the SIP alternative program."  Pl's Opp'n at 31.

In support of this argument, Goodall asserts that Hilton produced and
issued a memorandum "that set forth DOCCS' sudden expansion of SIP
alternative placement to non-court-ordered inmates and the applicable
medical and mental health suitability screens."  Pl's Opp'n at 32.  In plaintiffs
view, this shows that Hilton "could have implemented this expansion as early
as 2015, when [his] incarceration began, but did not do so at the time."  *Id.*

Upon review, Goodall has not shown that Hilton was personally involved
in the alleged violation of his equal protection rights.  The evidence plaintiff
relies on does not constitute sufficient evidence that Hilton played any role in
implementing the policy at issue in this case.  Accordingly, defendants are
entitled to summary judgment on plaintiff's § 1983 claim against Hilton.

### c. **Rehabilitation Aide Cluever**

Goodall asserts that a reasonable fact-finder could conclude that Cluever was personally involved in the alleged violation because, as an Offender Rehabilitation Aide at Greene, she was instrumental in the SIP screening process.  Pl.'s Opp'n at 32–33.  In making this argument, plaintiff relies on the undisputed facts that Cluever: (1) signed and submitted to her supervisor two memos of agreement plaintiff filled out in an attempt to participate in the SIP; and (2) completed two SIP suitability screening forms in relation to plaintiff by relying on information found in plaintiff's DOCCS file.  *Id.* at 32.

Upon review, the evidence Goodall on which relies does not demonstrate that Cluever had the requisite personal involvement.  Cluever's act of signing and submitting agreements merely reflects that received and transferred plaintiff's requests, which is insufficient to show personal involvement.  *See Cummings v. Paterson*, 2021 WL 2550821, at *11 (W.D.N.Y. June 22, 2021) (finding no personal involvement where, *inter alia*, DOCCS employees' participation was limited to the "receipt and transmission" of reasonable accommodation requests).  Moreover, Cluever's completion of the suitability screening forms does not, in any way, suggest that she directly participated in the ultimate denial of plaintiff's requests.  Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim against Cluever.

#### d.  **Rehabilitation Coordinator O'Hara**

Goodall argues that a reasonable fact-finder could conclude that O'Hara was personally involved in the alleged violation because, as a Senior ORC at Greene, she directly participated in the denial of his requests.  Pl.'s Opp'n at 33–35.  As proof of this, plaintiff asserts that O'Hara: (1) found him medically unsuitable for participation in the SIP; (2) recommended the denial of two of his grievances; and (3) complained in an email about his act of filing several grievances.  *Id.*

Upon review, this evidence does not demonstrate that O'Hara was personally involved in the alleged violation of Goodall's equal protection rights.  O'Hara's administrative finding that plaintiff was unsuitable for participation in the SIP does not signify that she took part in the denial of any of his requests.

Moreover, O'Hara's recommendation that Goodall's grievances be denied is inadequate to show personal involvement.  *See Weston v. Bayne*, 2023 WL 8435998, at *5 (N.D.N.Y. June 28, 2023), *report and recommendation adopted*, 2023 WL 8183219 (N.D.N.Y. Nov. 27, 2023) (noting that "playing a role in the administrative denial of a prison inmate's grievance" is insufficient to establish personal involvement).

Lastly, the email Goodall relies on does not even remotely suggest that O'Hara was personally involved in the denial of his requests. At most, the email indicates that O'Hara was aware of plaintiff's various requests and grievances. Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim against O'Hara.

### e.  Deputy Superintendent Fisher

Goodall argues that a reasonable fact-finder could conclude that Fisher was personally involved in the alleged violation because she reviewed and denied his first and second requests.   Pl.'s Opp'n at 35–37.

Viewing the facts in the light most favorable to Goodall, a reasonable jury could conclude that Fisher directly participated in the alleged violation of his equal protection rights. *See Cummings*, 2021 WL 2550821, at *12 (finding sufficient evidence of personal involvement for purposes of a deliberate indifference claim where the defendant denied the plaintiff's reasonable accommodation request). Therefore, plaintiff's § 1983 claim against Fisher remains for trial.

### f.  Deputy Superintendent Hammond

Goodall argues that a reasonable fact-finder could conclude that Hammond was personally involved in the alleged violation because he denied his third request. Pl.'s Opp'n at 37.

Upon review, there is sufficient evidence of Hammond's personal involvement to warrant the denial of summary judgment. As determined *supra* with respect to Fisher, the denial of Goodall's third request is sufficient to establish a fact question on Hammond's personal involvement in the alleged violation of plaintiff's equal protection rights. *See Cummings*, 2021 WL 2550821, at *12. Accordingly, plaintiff's § 1983 claim against Hammond remains for trial.

### g. **Rehabilitation Coordinator Mardon**

Goodall argues that a reasonable fact-finder could conclude that Mardon was personally involved in the alleged violation because: (1) Dugon asserted in a memorandum to Hammond that Mardon met with plaintiff to review the denial of his first request; and (2) Mardon's signature is on a screening form that determined that plaintiff was medically unsuitable for participation in the SIP. Pl.'s Opp'n at 37.

Upon review, the evidence Goodall focuses on does not demonstrate the requisite personal involvement of Mardon. Mardon's meeting with plaintiff to discuss the denial of his first request and the presence of her signature on the suitability form do not indicate that Mardon directly participated in the denial of plaintiff's requests. Thus, defendants are entitled to summary judgment on plaintiff's § 1983 claim against Mardon.

### h.  <u>Rehabilitation Coordinator Welytok</u>

Goodall argues that a reasonable fact-finder could conclude that Welytok was personally involved in the violation because he wrote a letter to him after the denial of his request asking to be reconsidered for participation in the SIP or an alternative program.  Pl's Opp'n at 38.  This letter was forwarded to Noriega because Welytok was no longer plaintiff's assigned ORC at the time.  *See* Ex. 17 to Caturano Decl. at 2.

Upon review, this evidence is categorically insufficient to demonstrate the personal involvement of Welytok.  It does not indicate that Welytok directly participated in the denial of his requests.  *See Douglas v. Annucci*, 2022 WL 2306934, at *8 (W.D.N.Y. June 27, 2022) (explaining that "[r]eceiving and forwarding an inmate's correspondence is insufficient to establish personal involvement by a prison official."); *Lusmat v. Papoosha*, 2023 WL 4236012, at *13 (D. Conn. June 28, 2023) (noting that the receipt of "a denial decision, is not sufficient to establish personal involvement in the actual denial decision itself").  Therefore, defendants are entitled to summary judgment on plaintiff's § 1983 claim against Welytok.

### i.  <u>Rehabilitation Coordinator Noriega</u>

Goodall argues that a reasonable fact-finder could conclude that Noriega was personally involved in the violation because she brought to Mardon's

attention the letter he sent to Welytok in relation to the denial of his first request.[16]  Pl.'s Opp'n at 37–38.

Upon review, Goodall has failed to show that Noriega had the requisite personal involvement.  The fact that Noriega received plaintiff's letter from Welytok, and informed Mardon of the letter, does not suggest that Noriega participated in the denial of plaintiff's requests.  *See Adams v. Annucci*, 2023 WL 2664301, at *11 (S.D.N.Y. Mar. 28, 2023) (noting receipt of an inmate's letter, by itself, is not personal involvement).  Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim against Noriega.

### j. **Superintendent Smith**

Goodall argues that a reasonable fact-finder could conclude that Superintendent Smith was personally involved in the violation because he: (1) denied three of his grievances; and (2) told Fisher that it was not a good idea for her to speak with him regarding his second request.  Pl.'s Opp'n at 38–39.

Upon review, Goodall has not demonstrated that Superintendent Smith was personally involved.  Neither the conversation with Fisher nor the denial

---

[16]  Goodall also relies on an email from Chris VanBergen, the Inmate Grievance Program Director, to another DOCCS employee requesting input from Noriega regarding his grievances.  *See* Pl.'s Opp'n at 38.  Plaintiff has failed to offer any explanation as to how this email demonstrates Noriega's personal involvement in the denial of his requests.

of plaintiff's grievances suggest that Superintendent Smith participated in the denial of plaintiff's requests to participate in the SIP.  These are separate administrative determinations.  *Shomo v. Dep't of Corr. & Cmty. Supervision*, 2022 WL 1406726, at *7 (S.D.N.Y. May 4, 2022) (noting that the "[p]laintiff's allegations that the Individual Defendants held certain positions within DOCCS and denied his grievances are simply insufficient.").  Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim against Superintendent Smith.

### k. **Dr. Smith**

Finally, although defendants assert that they seek dismissal of *all* of the individual defendants, they have failed to set forth any argument as to why Dr. Smith should be dismissed.  *See* Defs.' Mem. at 15–30.  Accordingly, Goodall's § 1983 claim against Dr. Smith remains for trial.

## V. **CONCLUSION**

In sum, all three of Goodall's claims—under the ADA, the Rehabilitation Act, and § 1983—remain for trial.  Nonetheless, several of the individual defendants must be dismissed because plaintiff has failed to show that they had the requisite personal involvement in the alleged violation of his equal protection rights.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for partial summary judgment (Dkt. No. 159) is DENIED;

2.  Defendants' motion for summary judgment (Dkt. No. 161) is GRANTED in part and DENIED in part;

3.  Plaintiff's ADA (Count One) and Rehabilitation Act (Count Two) claims against DOCCS remain for trial;

4.  Plaintiff's § 1983 equal protection claims (Count Three) remain for trial against defendants Annucci, Fisher, Hammond, and Doreen Smith;

5.  Plaintiff's § 1983 equal protection claims against defendants Hilton, Brandon Smith, Mardon, O'Hara, Cluever, Noriega, and Welytok are DISMISSED; and

6.  The Clerk of the Court is directed to TERMINATE those defendants from this action.

IT IS SO ORDERED.

Dated:  March 26, 2024
            Utica, New York.

David N. Hurd
U.S. District Judge